[No. H006345. Sixth Dist. Mar. 28, 1991.]

JUAN HEREDIA et al., Plaintiffs and Appellants, v.
FARMERS INSURANCE EXCHANGE, Defendant and Respondent.

**COUNSEL**

David J. Rude, Olimpia, Whelan & Lively and Tracy Tumlin for Plaintiffs and Appellants.

Lance Burrow and Mitchell & Stock for Defendant and Respondent.

**OPINION**

**PREMO, Acting P. J.**—Plaintiffs are Brian Sharp, an insured driver, Stephen Sharp, his father, and Juan Heredia, an injured claimant, who

obtained a $1.1 million judgment for personal injuries resulting from Brian Sharp's negligence. Together, they sued Brian Sharp's insurance company, Farmers Insurance Exchange (Farmers), asserting statutory, tort, and contract claims, including breach of the implied covenant of good faith and fair dealing.

The trial court granted Farmers' motion for summary adjudication of issues, ruling that the claimant's pretrial offer to settle the underlying negligence litigation was not within policy limits. Thereafter, the trial court granted the Farmers' motion for judgment on the pleadings. Plaintiffs appeal.

We affirm the trial court's summary adjudication, but we reverse the judgment.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### 1. The Underlying Negligence Litigation

In December 1982, a car driven by Brian Sharp and owned by his father, Stephen Sharp, collided with a motorcycle ridden by 25-year-old Juan Heredia. Heredia suffered serious, permanent injuries, including amputation of his right leg above the knee.

The Sharp car was insured by Farmers. Soon after the accident, Farmers investigated and concluded that Brian was at fault. In March 1983, Farmers offered Heredia the policy limit of $15,000 in exchange for a full release of the Sharps. The offer was rejected.

In May 1983, Heredia's counsel conducted an examination of the Sharps in which he determined that the Sharps had neither excess insurance coverage nor substantial personal assets.

In October 1983, Heredia sued Brian for negligence, Stephen for negligent entrustment, the City of Fresno (City) for negligent road design, and a Fresno church for negligent maintenance of the parking lot from which Brian exited just before the accident. The Sharps tendered defense of the suit to Farmers, which accepted.

In December 1983, Heredia's counsel spoke by telephone with a Farmers claims representative and with the attorney Farmers engaged to represent the Sharps. Subsequent correspondence establishes that Heredia's counsel offered not to execute any judgment against the Sharps if Farmers would promptly pay the policy limit of $15,000, if the Sharps would agree to

participate as parties at trial, and if Farmers would provide a defense for the Sharps. As the Sharps' counsel later explained in letters to Farmers' branch claims manager, Heredia wished to avoid an "empty chair defense" by the City and church defendants.

Apparently, Farmers' branch claims manager authorized the Sharps' counsel to accept this offer. Yet, in March 1984, the Sharps' attorney sent counterproposals to Heredia's attorney. He stated that if Heredia would agree to a full dismissal and release, Farmers would promptly pay the $15,000 policy limit and the Sharps would promise to participate as witnesses at trial. Alternatively, if Heredia would agree not to execute any judgment against the Sharps, Farmers would promptly pay the $15,000 policy limit and the Sharps would participate at trial as parties without counsel. Counsel cautioned: "Please do not consider these proposals as a rejection of your offer to compromise . . . ."

In his April 1984 response, Heredia's counsel rejected the counterproposals, withdrew his own offer, and suggested that Farmers had violated its duty to the Sharps and to Heredia through excessive delay and rejection of Heredia's offer.

In May 1984, the Sharps' counsel responded at length. He set forth the history of settlement negotiations, stated that his counterproposals were not intended as a rejection of Heredia's proposal, and protested that Farmers had not violated any duty to the Sharps or Heredia. Counsel closed as follows: "The Farmers Insurance Group, in behalf of Brian and Steven [sic] Sharp, continues to offer the Sharps' liability limits of $15,000.00 in settlement of plaintiff's case against them, under any of the following terms:

"1. In exchange for a full release and dismissal of the Sharps;

"2. In exchange for a full release and dismissal contingent upon Brian Sharp's participation at trial as a witness;

"3. In exchange for a covenant not to execute with the express understanding that the Sharps will be unrepresented at the trial;

"4. In exchange for a covenant not to execute with an agreement that the Sharps will be fully represented by counsel at the trial of this matter.

"The choice continues to be yours."

Heredia's counsel countered in June 1984 with an equally long response, disagreeing with several assertions in the letter from the Sharps' counsel.

Heredia's counsel noted that "[t]he last paragraph of your letter is beautifully done," but that Heredia's offer, represented by the fourth alternative in the letter from the Sharps' counsel, had been withdrawn. He explained that Heredia, his wife, and two children desperately needed a settlement when the offer was made in December 1983, but "[a]fter a while it seems a little ridiculous to be groveling on your knees for $15,000.00 on a case where a young man has lost his leg. On the contrary, the $15,000.00 should have been paid immediately and the covenant not to execute should have been accepted by Farmers . . . and yourself and the documentation and the draft should have been forwarded to me immediately long before Christmas of 1983. That opportunity has come and gone."

The trial of Heredia v. City of Fresno et al., commenced in June 1986. The Sharps participated in the trial as parties and were represented by counsel engaged by Farmers. The jury rendered a special verdict, finding that Brian was negligent and that his negligence was 100 percent responsible for Heredia's injuries. The jury awarded Heredia $1.1 million in damages. Following entry of judgment, Farmers paid the $15,000 policy limit as well as $6,000 in costs in exchange for a partial satisfaction of judgment.

In February 1987, Brian made a partial assignment of his claim against Farmers for breach of the implied covenant of good faith and fair dealing in exchange for Heredia's covenant not to execute the judgment against Brian's current or future assets.

### 2. The Instant "Bad Faith" Litigation

Heredia filed this insurance bad faith lawsuit against Farmers in March 1987. Heredia alleged that Farmers breached the implied covenant of good faith and fair dealing and that it breached its statutory duties to promptly investigate and process a claim (Ins. Code, § 790.03, subd. (h)(3)) and to attempt in good faith to effectuate a prompt and fair settlement (Ins. Code, § 790.03, subd. (h)(5)). Heredia sought to collect the excess judgment from the underlying negligence litigation.

The case was initially set for trial in November 1987. Due to nonavailability of courtrooms, the trial was continued until August 1988.

In January 1988, Farmers moved for summary judgment or summary adjudication of the statutory claims, arguing that they were precluded by Farmers' offer to pay the policy limit as soon as liability became reasonably clear. The trial court denied Farmers' motion, citing issues of fact. We denied Farmers' petition for writ of mandate or prohibition, noting that

Farmers had not demonstrated the trial would be significantly shorter or less costly if partial summary judgment were granted.

On the August 1988 trial date, the case was taken off calendar to allow the Sharps to join the lawsuit as plaintiffs based on newly discovered evidence. The first amended complaint, filed the following October, alleged that Farmers failed to timely inform the Sharps of Heredia's settlement offer and that Farmers rejected Heredia's offer and made counteroffers without consulting the Sharps and without giving them an opportunity to contribute to the settlement. Plaintiffs contend the Sharps were ignorant of any ongoing settlement discussion until late June 1984, when their counsel informed them that Heredia had made an offer which Farmers was willing to accept but which Heredia withdrew before Farmers could accept. The Sharps' counsel allegedly represented that these events took place in rapid succession, rather than over several months as actually occurred. Like Heredia, the Sharps alleged breach of the implied covenant of good faith and fair dealing and breach of statutory duties under Insurance Code section 790.03, subdivisions (h)(3) and (h)(5). The Sharps also alleged fraud, conspiracy to commit fraud, breach of fiduciary duty, and intentional infliction of severe emotional distress.

Farmers demurred to the first amended complaint. The parties reached a stipulated resolution of all issues raised in the demurrer except those concerning application of the recently decided *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58] (Ins. Code, §§ 790.03 and 790.09, do not establish a private right of action against insurers for violation of the Unfair Practices Act (Ins. Code, § 790 et seq.); ruling declared prospective only). The trial court overruled Farmers' demurrer and set an October 1989 trial date.

In August 1989, on the last possible day prior to trial, Farmers filed a motion for summary judgment or summary adjudication of issues. For the first time, Farmers called attention to a clause in the Sharp insurance policy providing: "We will not defend any suit or make additional payments after we have paid the limit of liability for the coverage." Farmers subsequently withdrew the motion for summary judgment but requested summary adjudication whether Heredia's offer, seeking $15,000 and legal representation of the Sharps at trial, was within policy limits.

In response, plaintiffs submitted excerpts from depositions of Farmers' own insurance law and practice experts. One testified that the alternatives contained in the May 1984 letter from the Sharp's counsel to Heredia's counsel, including the fourth alternative representing Heredia's offer, were all within the coverage provided by the Sharp policy. The other testified

that he did not think Farmers or its representatives had ever taken the position that Heredia's settlement proposal was beyond the scope of coverage provided by the Sharp policy.

The trial court granted Farmers' motion for summary adjudication, ruling that Heredia's offer in December 1983 was not within the policy limits.

Plaintiffs next sought a writ of mandate from this court and a stay of the trial scheduled a few days hence. We denied both requests.

The case was called to trial in October 1989. Farmers moved for judgment on the pleadings, to dismiss, or for preliminary determination of facts under Evidence Code sections 402 and 403. Farmers challenged the standing of each plaintiff—Juan Heredia, Brian Sharp, and Stephen Sharp—to maintain the action against Farmers following the summary adjudication that Heredia's offer was not within the limits of the Sharp policy. During a hearing on the matter, plaintiffs' counsel also expressed a desire to put the entire case before the appellate court now, rather than proceed to trial hampered by the earlier ruling.

The trial judge granted Farmers' motion for judgment on the pleadings and entered judgment for Farmers on October 13, 1989. Plaintiffs timely appealed.

### DISCUSSION

#### 1.   Standards for Summary Adjudication and Appellate Review

Code of Civil Procedure section 437c, subdivision (f), provided: "A party may move for summary adjudication of issues, either by itself or as an alternative to summary judgment. If it appears that the proof supports the granting of the motion for summary adjudication as to some but not all the issues involved in the action, . . . the court shall, by order, specify that those issues are without substantial controversy. . . . At the trial of the action the issue so specified shall be deemed established and the action shall proceed as to the issues remaining."

In reviewing an order granting summary adjudication of issues, we are governed by the rules generally applicable to review of summary judgments. (See *Tauber-Arons Auctioneers Co.* v. *Superior Court* (1980) 101 Cal.App.3d 268, 273 [161 Cal.Rptr. 789].) Thus, we conduct a de novo review (*D'Aquisto* v. *Campbell Industries* (1984) 162 Cal.App.3d 1208, 1212 [209 Cal.Rptr. 108]), employing the same analysis required of the trial court (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d

1061, 1064 [225 Cal.Rptr. 203]). We may conclude that "the trial court was justified in granting the motion here only if the declarations filed in support of it, strictly construed, contain facts sufficient to entitle the defendants to judgment, and those of plaintiffs, liberally construed, show that there was no issue of fact to be tried." (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].)

### Summary Adjudication of Policy Limits Issue

"In *Comunale* v. *Traders & General Ins. Co.* [1958] 50 Cal.2d 654, 658 [328 P.2d 198, 68 A.L.R.2d 883], [the Supreme Court], in a unanimous decision, held that 'there is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement,' and that this principle is 'applicable to policies of insurance.' The implied covenant of good faith and fair dealing imposes a duty on the insurer to settle a claim against its insured within policy limits whenever there is a substantial likelihood of a recovery in excess of those limits. (*Id.*, at p. 659.)" (*Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau* (1975) 15 Cal.3d 9, 14-15 [123 Cal.Rptr. 288, 538 P.2d 744].) For that reason, Farmers sought summary adjudication whether Heredia's settlement offer was within the limits of the Sharp policy.

There is no dispute between the parties regarding the content of the Sharp policy or the conditions of the Heredia offer.

Stephen purchased from Farmers a policy providing a maximum of $15,000 coverage. The policy stated: "We will pay no more than the maximum limits provided by this policy regardless of the number of vehicles insured, insured persons, claims, claimants or policies, or vehicles involved in the occurrence." The policy also provided: "We will pay damages for which any insured person is legally liable because of bodily injury to any person, and property damage arising out of the ownership, maintenance or use of a private passenger car, a utility car, or a utility trailer. [¶] We will defend any claim or suit asking for these damages. We may settle when we consider it appropriate. [¶] We will not defend any suit or make additional payments after we have paid the limit of liability for the coverage."

In December 1983, Heredia offered not to execute any future judgment against the Sharps in exchange for the following: Farmers must promptly pay Heredia the policy limit of $15,000, the Sharps must participate as parties at trial, and Farmers must provide a defense for the Sharps.

In granting summary adjudication, the trial court ruled as follows: "The court finds that for purposes of the trial of this action it is established that in

December, 1983 plaintiff did not make an offer to Farmers to settle the case within the policy limits. Therefore, as a matter of law, Farmers' failure to accept the December, 1983 offer is not a basis for subjecting Farmers to liability for the excess judgment entered against its insureds."

■ We conclude that the trial court's summary adjudication is correct. The Sharp policy unambiguously provides that Farmers was not obligated to provide an attorney after paying the $15,000 policy limit. Heredia's offer was plainly beyond the policy limit. Indeed, even the complaint alleges that ". . . Plaintiff HEREDIA'S settlement offer would cost FARMERS no more than their policy limits *plus* the cost of the attorney they were obligated to provide under the policy . . . ." (Italics added.) Completing the mathematical equation, the trial court properly concluded that $15,000 *plus* the cost of defense *does not equal* $15,000.

The trial court relied solely upon *Johnson v. Continental Ins. Companies* (1988) 202 Cal.App.3d 477 [248 Cal.Rptr. 412] (*Johnson*), in which Continental promptly paid the policy limit of $50,000 to four third party claimants who were injured by the insured's truck. Thereafter, the insured sued the manufacturer of her truck, the retailer of the truck's wheels, and various other parties, one of whom filed a cross-complaint against the insured. The insured demanded that Continental provide a defense to the cross-complaint.

In language that closely tracks the Sharp policy, the Continental policy at issue in *Johnson* stated: " 'If a claim is made, we will defend the claim or lawsuit. The claim must be covered by this policy. We will defend the claim or lawsuit even if the claim or lawsuit proves to be groundless, false or fraudulent. In defending a claim or suit, we may conduct any investigations we consider necessary. We may make any settlements we consider advisable. [¶] However, we are not obligated to: [¶] (a) pay any claim or judgment; or [¶] (b) defend any claim or lawsuit; [¶] when our payments have reached your Limit of Coverage.' " (*Johnson, supra,* 202 Cal.App.3d at p. 481.)

The *Johnson* court concluded that this language was clear, unambiguous, and sufficiently conspicuous to "plac[e] the insured on notice that Continental's duty to defend would end when payments made by Continental totaled to $50,000, the amount of liability coverage." (*Johnson, supra,* 202 Cal.App.3d at p. 481.) The insured argued, nonetheless, that California should follow the lead of other jurisdictions holding that an insurer's duty to defend may continue after exhaustion of policy liability limits.

In *Gross v. Lloyds of London Ins. Co.* (1984) 121 Wis.2d 78 [358 N.W.2d 266], for example, the insurer attempted to settle with the claimants for the

policy limit of $100,000. When the claimants refused and filed an $11 million suit, the insurer sought to deposit the policy limit with the court in order to avoid defense of the insured. In *Conway* v. *Country Cas. Ins. Co.* (1981) 97 Ill.App.3d 768 [423 N.E.2d 559], the insurer settled with the claimant for the full $10,000 policy limit. The claimant did not release the insured, however, and continued to prosecute a personal injury action against the insured. As the *Johnson* court observed, "In both *Gross* and *Conway*, the insurer's tendering of the policy limit amounts during pending litigation involving the insured was an act designed to artificially exhaust policy limits in order to avoid excess liability payment. Under these conditions, the courts held that the insurer's duty to defend the insured was not discharged." (202 Cal.App.3d at p. 485.)

The *Johnson* court was unpersuaded by these out-of-state cases "rely[ing] principally on the idea that an insurer, after being apprised of pending litigation against its insured, may not walk away from its duty to defend its insured by tendering its policy limits. . . . [T]hese cases are inapplicable to the instant facts since the insurer here tendered its policy limits in response to the demand of its insured prior to the initiation of litigation arising from the accident. [¶] We do not construe Continental's conduct as abandoning Johnson in midcourse or placing upon her shoulders the full burden of investigation, settlement, or defense." (202 Cal.App.3d at p. 486.)

Although the *Johnson* court observed "that California has yet to rule on the issue of whether an insurer must continue to defend claims that are proper under the substantive provisions of the policy after the monetary limits of the policy have been reached" (202 Cal.App.3d at pp. 483-484), the court ignored a similar case it had decided several years earlier. In *Ohio Casualty Ins. Co.* v. *Hubbard* (1984) 162 Cal.App.3d 939 [208 Cal.Rptr. 806] (*Ohio Casualty*), the same court held that the insurer had a duty to defend against punitive damage claims although it was prohibited by law from indemnifying the insured for such damages and although it had already obtained a release of all covered claims.

Plaintiffs rely upon *Ohio Casualty* as well as cases discussed in *Johnson*. They point out that the posture of this case at the time of Heredia's offer in December 1983 was very different from the posture of *Johnson* when it was settled. In this case, Heredia had already filed suit when he made his settlement demand. Plaintiffs argue that Farmers was not free to simply pay $15,000 and walk away from the lawsuit, leaving the Sharps to fend for themselves.

But there is no indication that Farmers intended to do that. Within weeks after the accident, well before Heredia filed suit or communicated his

settlement demand, Farmers tendered the policy limit of $15,000 in exchange for a full release of the Sharps. After Heredia rejected that offer, filed suit, and made his own offer in December 1983, Farmers communicated two counterproposals in March 1984 and four alternatives in May 1984, all of which fully protected the Sharps from exposure to any excess judgment. Each of Farmers' alternatives required either full dismissal and release of the Sharps or an agreement not to execute any future judgment against the Sharps.

In those cases cited by plaintiffs here and by the insured in *Johnson*, the insurer tried to abandon the insured when the insured was still exposed to liability. And the courts held that the insurer's duty to defend continued despite payment of the policy limits or, even in the absence of full payment, despite a legal bar to indemnification. (See *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 573-575 [108 Cal.Rptr. 480, 510 P.2d 1032] [an insurer's duty to defend is separate from and much broader than the duty to indemnify].) Thus, the absence of an insurer's potential liability does not necessarily eliminate an insurer's duty to defend. Rather, the policy must be construed "according to the layman's reasonable expectations . . . ." (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 274 [54 Cal.Rptr. 104, 419 P.2d 168], fn. omitted; *Ohio Casualty, supra,* 162 Cal.App.3d at p. 947.)

This case is different from the cases cited by plaintiffs and discussed in *Johnson*. Heredia offered not to execute any judgment against the Sharps so long as Farmers paid the policy limits *and* defended the Sharps at trial. In other words, Heredia sought to keep the insurer on the hook even when the insured was not exposed to liability. Heredia has cited neither authority nor justification for imposing such a duty upon an insurer. Heredia's offer was plainly beyond the unambiguous provisions of the Sharp policy and, we think, well beyond a layman's reasonable expectations. (See *Aetna Cas. & Surety Co.* v. *Certain Underwriters* (1976) 56 Cal.App.3d 791, 798 [129 Cal.Rptr. 47] ["the duty to defend ends with the policy limits, assuming no prejudice attaches to the insured"].)

■ Nor are we persuaded by plaintiffs' other arguments regarding construction of the insurance policy. Plaintiffs seek to characterize as an "exclusionary clause" the critical sentence in the Sharp policy: "We will not defend any suit or make additional payments after we have paid the limit of liability for the coverage." Thus, they argue, the sentence should be narrowly construed. (See *State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94, 101-102 [109 Cal.Rptr. 811, 514 P.2d 123].) We disagree with plaintiffs' characterization. "Exclusions" are policy provisions stating that certain causes of loss, or certain consequences of an insured event, are not covered by the policy. (See Kulp & Hall, Casualty Insurance (4th ed. 1968)

p. 30.) The critical sentence in the Sharp policy simply establishes the order and priority of available coverage.

■ Plaintiffs also urge that Farmers be held to its own interpretation of the policy. (See *Crump* v. *Northwestern Nat. Life Ins. Co.* (1965) 236 Cal.App.2d 149, 157 [45 Cal.Rptr. 814] ["[a]n insurer is bound by its interpretation of its own policy"].) They insist that, during negotiations with Heredia, Farmers never viewed Heredia's offer as being *outside* policy limits. We have reviewed the portions of the record cited by plaintiffs, and we find little indication that Farmers viewed Heredia's offer as being *within* policy limits, other than the after-the-fact opinions of two experts. Indeed, the contemporaneous statement that plaintiffs choose to quote in full indicates the opposite. The attorney Farmers engaged to represent the Sharps wrote to Farmers' branch claims manager in December 1983: "I am unaware of any requirement that the policy limits be tendered without a full release and dismissal of the insured in exchange." Nonetheless, counsel went on to suggest that a covenant not to execute the judgment would protect the insured and that, under the circumstances, representation of the insured at trial would not be burdensome. Simply because Farmers weighed the pros and cons of Heredia's offer does not necessarily mean that Farmers viewed the offer as being within policy limits.

We affirm the order granting summary adjudication.

## 2. Standards for Judgment on the Pleadings and Appellate Review

■ A motion for judgment on the pleadings is, in effect, a general demurrer that can be asserted at any time. (6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, § 262, p. 563.) Thus, the movant contends that the adversary's pleading, on its face, "fails to state a cause of action." (*Sofias* v. *Bank of America* (1985) 172 Cal.App.3d 583, 586 [218 Cal.Rptr. 388].) The pleader's allegations must be accepted as true and liberally construed in his favor. (*Higgins* v. *Del Faro* (1981) 123 Cal.App.3d 558, 565 [176 Cal.Rptr. 704].)

Like a demurrer, a motion for judgment on the pleadings may be addressed to the pleading as a whole or to separate counts. If addressed to the pleading as a whole, the motion must be denied if even one count is good. (See *Lord* v. *Garland* (1946) 27 Cal.2d 840, 850 [168 P.2d 5].) If addressed to separate counts, the motion may be granted as to some counts and denied as to others. (See *Steiner* v. *Rowley* (1950) 35 Cal.2d 713, 720 [221 P.2d 9].)

■ Since judgment on the pleadings is equivalent to a judgment entered after the sustaining of a demurrer, the standard of appellate review is the

same. (*Baillargeon* v. *Department of Water & Power* (1977) 69 Cal.App.3d 670, 675 [138 Cal.Rptr. 338].) Thus, "[w]hen a [motion for judgment on the pleadings is granted], we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.]" (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

### *Judgment on the Heredia/Sharp Amended Complaint*

■ Farmers contends that the summary adjudication, which we affirm today, eliminated all claims sounding in contract because the judge "held as a matter of law that [Farmers] did not breach its contract with the SHARPS . . . ." Thus, Farmers concludes, the only claims remaining and challenged by the motion for judgment on the pleadings sound in tort. And Farmers "believes that the law of this State as it relates to 'insurance bad faith' is that the conduct of an insurer does not rise to the level of a tort *unless and until* the insurer unreasonably fails or refuses to provide the insurance available whether it be the policy limits in an appropriate 'third party' case or the benefits of the policy of insurance in an appropriate 'first party' case."

Farmers goes on to analyze the remaining tort claims in terms of standing. Following the summary adjudication, according to Farmers, Stephen no longer has standing to prosecute a tort action because Heredia's suit against him was dismissed prior to verdict and Stephen was never subjected to the excess judgment. Although Brian was subjected to the excess judgment, his tort claims are insupportable because he cannot show that Farmers unreasonably refused to settle. The same goes for Heredia, who chose not to accept Farmers' offer to pay the policy limits.

Farmers' reading of the trial court's summary adjudication is overbroad. The court's order, as well as the hearing that preceded it, leaves no doubt that the court intended a very narrow ruling and not a sweeping pronouncement, as Farmers contends, that Farmers "did not breach its contract with the SHARPS . . . ." To repeat, the court held "that for purposes of the trial of this action it is established that in December, 1983 plaintiff did not make an offer to Farmers to settle the case within the policy limits. Therefore, as a matter of law, Farmers' failure to accept the December, 1983 offer is not a basis for subjecting Farmers to liability for the excess judgment entered against its insureds." To paraphrase, we read the court's conclusion as follows: Heredia's offer was not within the Sharp policy limits. Therefore, Farmers may not be subjected to liability for the excess judgment based upon rejection of an offer within the Sharp policy limits.

Indeed, during the hearing on the motion for summary adjudication, the judge questioned whether anything would be left of the case if the motion

were granted. Farmers' counsel was adamant: "Yes, there is. Yes, there is, Your Honor. There are other claims that these plaintiffs have raised. They've raised a 790.03 claim which this issue doesn't speak to. They've raised claims concerning other conduct of the insurance company which this motion doesn't speak to. Those claims relate to . . . an alleged failure on the part of the insurance company and its attorney to inform the Sharps of certain facts concerning the way the lawsuit was . . . tracking, and the failure to provide certain kinds of advice . . . ." While Farmers is not bound by this statement, it certainly indicates the breadth of Farmers' motion for summary adjudication.

In fact, the complaint asserts several claims, sounding in contract and in tort, that do not depend upon a finding that Heredia's offer was within policy limits. Some claims assume quite the opposite. The complaint alleges that Farmers breached its duties by failing to timely inform the Sharps of Heredia's settlement offer, by rejecting the offer without giving the Sharps an opportunity to contribute sums above policy limits, by failing to raise coverage problems with the Sharps, by failing to inform Heredia's attorney that his offer exceeded policy limits, and by unreasonably delaying settlement.

Plaintiffs' allegations garner support from case law. (See, e.g., *Beck* v. *State Farm Mut. Auto. Ins. Co.* (1976) 54 Cal.App.3d 347 [126 Cal.Rptr. 602] [insurer's unreasonable delay in providing benefits may constitute breach of implied covenant of good faith and fair dealing]; *Merritt* v. *Reserve Ins. Co.* (1973) 34 Cal.App.3d 858, 875 [110 Cal.Rptr. 511] ["If a settlement offer is made in excess of policy limits, what obligations or duties then fall upon the parties to the policy? . . . Obviously, the first step is for the carrier on the tender of such an offer to communicate the offer to the assured."]; *Continental Cas. Co.* v. *United States Fid. & Guar. Co.* (N.D.Cal. 1981) 516 F.Supp. 384 [under California law, insurer breached implied covenant of good faith and fair dealing by failing to inform insured of offer in excess of policy limits in order to afford insured opportunity to contribute to settlement]; *Allen* v. *Allstate Ins. Co.* (9th Cir. 1981) 656 F.2d 487, 490, fn. omitted [under California law, insurer held liable for excess judgment based on failure to notify claimant of deficiency in offer's scope; claimants need not "begin settlement overtures with letter-perfect offers to which insurers need only respond 'Yes' or 'No.' An insurer's duty of good faith would be trifling if it did not require an insurer to explore the details of a settlement offer that could prove extremely beneficial to its insured."].)

Therefore, we conclude that the complaint states facts sufficient to constitute a cause of action. Farmers' motion for judgment on the pleadings was addressed generally to the standing of each plaintiff and not specifically to

the viability of each claim following the summary adjudication. Because we conclude that at least some causes of action survive, we reverse the trial court judgment as to the entire complaint.[1]

## DISPOSITION

The judgment is reversed. The order granting defendant's motion for summary adjudication of issues is affirmed. Each party shall bear its own costs on appeal.

Cottle, J., and Elia, J., concurred.

---

[1] We note that the claims asserted on behalf of Heredia all appear to assume Heredia's offer was within the Sharp policy limits. His allegations refer again and again to the "policy limits settlement offers." The allegations contained in the Sharp portion of the complaint suggest the alternative that Heredia's offer was not within policy limits. The Sharp portion of the complaint incorporates allegations from the Heredia portion, but not vice versa.

During the hearing on Farmers' motion for judgment on the pleadings, plaintiffs' counsel explained that leave was granted to amend the complaint, adding the Sharps as plaintiffs, so long as Heredia's portion of the complaint remained unchanged. Counsel indicated that Farmers sought the condition to avoid any reassignment of claims from Heredia to Brian Sharp. We find no other mention in the record of this condition or any further explanation of why it was imposed.

We do not express an opinion whether, under some theory, the Heredia portion of the complaint may be read in conjunction with the Sharp portion of the complaint. (See, e.g., *Purcell* v. *Colonial Ins. Co.* (1971) 20 Cal.App.3d 807 [97 Cal.Rptr. 874] [insured who assigns his claim for the excess judgment, based on insurer's violation of the implied covenant of good faith and fair dealing, but retains his personal claims, such as for emotional distress and punitive damages, must join the assignee in a single cause of action against the insurer; separate suit by insured improperly splits the cause of action].)

Neither do we express an opinion whether plaintiffs should be granted leave to amend their complaint upon remand. Plaintiffs have not challenged on appeal any condition placed upon the filing of the amended complaint. Nor did they request leave to amend the complaint after the trial court granted Farmers' motion for judgment on the pleadings. (See *Tiffany* v. *Sierra Sands Unified School Dist.* (1980) 103 Cal.App.3d 218, 225-226 [162 Cal.Rptr. 669].) Undoubtedly, plaintiffs were intent upon obtaining review of the summary adjudication issue. When their petition for writ of mandate failed, they acquiesced in the entry of final judgment in order to obtain immediate review.