89 Cal.Rptr.2d 222 (1999)
75 Cal.App.4th 373
FARMERS INSURANCE EXCHANGE, Plaintiff, Cross-defendant and Respondent,
v.
Margaret Ann JACOBS et al., Defendants, Cross-complainants and Appellants.
No. B113172.
Court of Appeal, Second District, Division Two.
September 30, 1999.
Review Denied January 13, 2000.[*]
*223 Mazursky, Schwartz & Angelo, Charles J. Mazursky, Watkins & Stevens and Steven B. Stevens, Los Angeles, for Defendants, Cross-complainants and Appellants.
Chapin, Fleming, MeNitt, Shea & Carter, Craig H. Bell and Richard D. Carter, San Diego, for Plaintiff, Cross-defendant and Respondent.
BOREN, P.J.
An insurance company voluntarily undertakes to defend an insured regarding an automobile accident that occurred after the insured allowed the policy to expire. What remedy does the insured have if the insurance company in defending fails to inform the insured about a proposed settlement offer?
Defendants Margaret Ann Jacobs and several family members (collectively referred to as Jacobs) appeal from a declaratory judgment in favor of plaintiff Farmers Insurance Exchange (Farmers). Farmers filed a complaint for declaratory relief, naming Jacobs and Patrick Vincent as defendants. Farmers sought a judicial declaration that no written policy of automobile liability insurance obligated it to provide defense or indemnification coverage to Vincent regarding an underlying wrongful death suit brought by Jacobs. Following a nonjury trial, the trial court found that the automobile insurance policy issued to Vincent had lapsed for nonpayment of premium. Therefore, the court held, no policy was in force on the date of the fatal accident involving Jacobs' decedent and Vincent, who, as the result of the accident, was convicted of vehicular manslaughter. The court ruled that Farmers had no duty to defend the Jacobs' wrongful death claim and no duty to communicate settlement offers to Vincent, and that no action for breach of the covenant of *224 good faith and fair dealing could be maintained.
We affirm the judgment entered in favor of Farmers.

FACTUAL BACKGROUND
Vincent had an automobile insurance policy with Farmers, renewable every six months, with a $100,000 liability limit for bodily injury damages. The policy also contained a typical provision that the insurer "will defend any claim or suit asking for these damages. We may settle when we consider it appropriate." On November 14, 1989, Farmers mailed Vincent an offer to renew the policy for an additional six-month period, provided he accepted and sent the required premium payment by December 12, 1989. Although Vincent received this notice in his mail,[1] he did not pay the renewal premium by December 12, 1989. On December 17, 1989, Farmers then sent an "important expiration notice" which unilaterally extended the due date 15 days, to December 27, 1989, "without interruption of coverage" if the premium payment was received by that date. The December 17 notice did not specify that the policy had expired and stated that "if payment has been made please disregard this notice."
On December 27, 1989, Vincent spoke with Ray Rendon, an employee at the Farmers office of his insurance agent, Michael Puhek. According to Vincent, he indicated his intent to mail the check for the premium payment, and was advised to mail the check promptly. Vincent's fiancee, Kelly Poole, heard "Vincent tell the person on the other end of the phone that [he would] get a check in the mail today." According to Puhek, however, Rendon was trained by Farmers to advise clients whose policies had lapsed to bring the premium payment to the nearest Farmers office and get a receipt. Rendon was not trained to assure an insured that a policy would be renewed without a lapse after a late payment.
On December 30, 1989, Vincent was involved in a tragic automobile accident that resulted in the death of Ronald Jacobs. The accident was the basis for the Jacobs' wrongful death action against Vincent, who was driving while under the influence of alcohol. On December 31, 1989, Poole visited Vincent in the hospital. According to Poole, Vincent told her he was not sure if he had mailed the insurance premium. He asked her to look inside his van to see if an unmailed envelope to Farmers was there, but she did not attempt to look through the wrecked vehicle. Also on December 31, 1989, out of an abundance of caution, Poole wrote a check dated December 29, 1989, from her own checking account and sent it to the Farmers agent for payment of Vincent's premium. The envelope in which she sent the check was postmarked January 2, 1990. Poole mailed that check, knowing she had backdated it, but without knowing whether an envelope addressed to Farmers was still in Vincent's van. Vincent had not in fact mailed a check to Farmers.
On January 2, 1990, Poole notified an employee at the Farmers agency of the fatal car accident. On January 3, 1990, a Farmers employee received and accepted the money from Poole for Vincent's policy and checked off boxes on a dated receipt form indicating both "renewal" and "reinstatement" of Vincent's policy. Farmers cashed the check mailed by Poole and issued a policy to Vincent with the same policy number and the same coverage, and with a stated effective date of January 3, 1990. On January 5, 1990, the Farmers regional office advised Vincent that his policy was "out of force" and could be reinstated, but that "if payment has already *225 been made, please disregard this notice."
After Farmers was notified of the Jacobs wrongful death claim, Farmers initiated an investigation of the facts to determine whether the policy for Vincent was in force on the date of the accident. Accordingly, Farmers obtained statements from Vincent, Poole, Puhek, the Farmers agent, and Rendon, the agent's employee, who had spoken to Vincent on December 27, 1989. By the middle of January, Farmers had taken all the statements but had not yet decided whether to afford coverage. On January 25, 1990, Farmers sent Vincent a reservation of rights letter. The letter advised Vincent, in pertinent part, that he "may" not have insurance coverage, but that Farmers would "investigate this occurrence to determine the facts of the accident and to obtain information on any claims that may arise," that "[n]either by investigation, negotiating for settlement, or settlement, nor by undertaking the defense of any legal action which may result from this occurrence does [Farmers] waive its right to deny coverage," and that Farmers reserved "the right ... to withdraw from the investigation of the accident or from the defense of any suit arising out of the accident."
On February 2, 1990, Jacobs, through attorney Robert Mars, mailed an offer to Farmers to settle the wrongful death claim for the policy limits of $100,000. By its terms, the offer was to expire on March 2, 1990. On February 7, 1990, Farmers sent a letter to Mars indicating it was investigating an unresolved problem as to Vincent's insurance coverage, but advising Mars to "direct all future correspondence" concerning the Jacobs claim against Vincent to the Farmers claims representative. On February 9, 1990, Farmers sent a letter to Mars acknowledging receipt of the Jacobs settlement offer and reiterating that it was still conducting an investigation to determine if Vincent had insurance coverage in effect.
On February 14, 1990, Mars again wrote to Farmers and advised the insurance company that Mars would entertain a written request for an extension of time regarding the policy limits offer. Mars further offered that, assuming there was no coverage, Jacobs would accept a settlement of $100,000 with Vincent directly, payable in cash or in installments, provided an agreement could be reached with Vincent by March 2, 1990. Farmers asserts that this one letter, of the three letters sent by Mars, was never received by anyone at Farmers, and that the letter was purportedly "fabricated" by attorney Mars. In a letter sent certified mail and dated February 28, 1990, Mars again reiterated to Farmers his offer to settle by the stated deadline, after which time a lawsuit would be filed against Vincent. Farmers never responded to Mars' offer to settle and never requested an extension of time during which to consider the offer.
Farmers never communicated to Vincent the offer made by Mars to settle the Jacobs wrongful death claim for $100,000. With their settlement offer ignored, Jacobs filed a wrongful death action against Vincent. Vincent tendered his defense to Farmers, which accepted the tender pursuant to its prior reservation of rights letter. Farmers also filed the present action for declaratory relief and moved for summary judgment on the theory that there was no duty to defend because the policy was not in force on the date of the accident.
In opposing Farmers' motion for summary judgment, Jacobs (pursuant to an assignment of Vincent's rights under any Farmers policy) urged that Vincent's liability policy was in effect until at least January 5, 1990. Jacobs reasoned that the "expiration notice" dated December 17, 1989, did not specify that the policy had yet expired and did not in any of its language clearly advise a person of ordinary intelligence that coverage would be canceled or terminated if the premium was not paid by a specified date. The December *226 17 notice did state: "Although the due date has passed you can still accept the Company's offer to renew your policy. If payment is received in one of our Company offices or directly by an authorized Sales Representative of the Company within 15 days after the due date, your policy will renew without interruption of coverage." According to Jacobs, the notice thus conferred upon Vincent a 15-day extension or grace period to pay from December 12 to December 27, but did not specifically advise him that if he did not pay by December 27, his policy would be canceled or terminated. Only in the notice dated January 5, 1990, five days after the accident, did Farmers specifically advise Vincent that his policy was "out of force."
The trial court denied Farmers' motion for summary judgment. The court observed that the December 17, 1989, notice did not specifically and unequivocally state that Vincent's insurance had expired, and that the notice advised Vincent he could still accept Farmers' offer to renew even though the due date had passed. The trial court found a triable issue of fact whether an ordinary person would understand this notice to mean that the policy was completely canceled, or whether it was in force and in effect until January 5, 1990, when a specific termination notice was sent. Finding the notice ambiguous, the court also queried whether the 15-day period referred to was an extra binder with termination of the policy 15 days after. The court concluded: "This is not an unambiguous notice, ... so [it is] for the trier of fact to determine what it means."
We denied Farmers' petition for a writ of mandate seeking to overturn the order denying Farmers' motion for summary judgment. Thereafter, Farmers' declaratory relief action was held in abeyance pending the outcome of the wrongful death case. The wrongful death action proceeded to a jury trial in August of 1992, and resulted in a judgment against Vincent for $2,200,000.
Jacobs obtained a partial assignment of Vincent's rights against Farmers. Jacobs also obtained leave of court to cross-complain, or alternatively to intervene in the declaratory relief matter as assignees of Vincent's right to sue Farmers for breach of the implied covenant of good faith and fair dealing based on Farmers' failure to notify Vincent of the opportunity to settle the wrongful death claim for $100,000. The trial on Farmers' declaratory relief action and on Vincent's and Jacobs' cross-complaint was divided into three phases. In the first phase of the trial, the court ruled that the policy was not in force at the time of the accident, which was the only issue then before it.[2] Jacobs acknowledges that the court's ruling, that a policy of insurance was not in force on the date of the accident, is not a subject of the present appeal.
In the second phase of the trial, the court was to determine whether, irrespective of its finding in the first phase, Farmers nevertheless owed a duty to defend, which included an obligation to notify Vincent of the settlement opportunity offered by Jacobs in February of 1990. If the court ruled there was such a duty, then phase three of the trial would determine whether there had been a breach of that duty and any damages to which Jacobs would be entitled.
Although the trial court initially ruled in a tentative decision in the second phase that Farmers did have a duty to defend and therefore to communicate the settlement offer, it reconsidered the matter and ruled otherwise. The court ultimately *227 ruled that because it had found the policy not in force on the date of the accident, there was no obligation to defend at any time and thus no duty to communicate the settlement offer to Vincent. The court then denied the Jacobs motion for a new trial or for reconsideration.

DISCUSSION
An insurer must communicate a settlement offer to its insured. (Heredia v. Farmers Ins. Exchange (1991) 228 Cal. App.3d 1345, 1360, 279 Cal.Rptr. 511.) An unwarranted refusal to consider the interests of the insured when the insurer rejects an offer to settle can constitute a breach of the implied covenant of good faith and fair dealing. (Comunale v. Traders & General Ins. Co. (1958) 50 Cal.2d 654, 659, 328 P.2d 198.) Moreover, an insurer's failure to consider the interests of its insured and inform its insured about the settlement offer is a factor in determining whether the insurer acted in bad faith. (Critz v. Farmers Ins. Group (1964) 230 Cal.App.2d 788, 796, 41 Cal.Rptr. 401.) The question in the present case is to what extent the obligation of an insurer to communicate a settlement offer to its insured exists where it has been determined that the insurance policy had lapsed at the time of the accident and the insurer had no duty to defend.
We must start with the fact that Vincent's contract of insurance had expired and was not in force on the date that the fatal accident occurred. The trial court's decision in that regard was not appealed and has become final. We are now bound by that determination.
The secondary question is whether the trial court properly found that there was no duty to defend. If there was a duty to defend, then Farmers was contractually obligated to inform Vincent about the settlement proposed by the Jacobs parties and to handle it in full consideration of Vincent's interests. If there was no duty to defend, Farmers, having undertaken to represent Vincent, was obligated as a volunteer to do so non-negligently. Failing to inform Vincent about the offer, we will assume, constituted professional negligence. The problem is that appellants in the court below and on this appeal, for whatever reasons, have affirmatively disavowed any negligence cause of action. Though this appears to have been a viable remedy for appellants, it is not before us.
Thus, appellants have put all their eggs in the basket of duty to defend. The trial court determined that Farmers had no duty to defend. We must uphold the trial court's determination that there was none.
As previously noted, no contract of insurance existed between the parties on the date of the fatality. Farmers relies on Waller v. Truck Ins. Exchange, Inc. (1995) 11 Cal.4th 1, 44 Cal.Rptr.2d 370, 900 P.2d 619, where the California Supreme Court noted that "because a contractual obligation is the underpinning of a bad faith claim, such a claim cannot be maintained unless policy benefits are due under the contract." (Id. at p. 35, 44 Cal.Rptr.2d 370, 900 P.2d 619.) We agree with Farmers that Waller controls on this issue. The Supreme Court explained: "It is clear that if there is no potential for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer.... In sum, the covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement.... Absent that contractual right, however, the implied covenant has nothing upon which to act as a supplement and `should not be endowed with an existence independent of its contractual underpinnings.'" (Waller, supra, 11 Cal.4th at p. 36, 44 Cal.Rptr.2d 370, 900 P.2d 619, citations omitted.)
We do not accept Jacobs' implied rationalization that Farmers, in undertaking to investigate in order to determine whether a contract of insurance existed, created a new contractual relationship with Vincent or in any way created an implied covenant of good faith and fair dealing.
*228 The general proposition is undisputed that an underlying contractual relationship is a necessary prerequisite to a cause of action for breach of the implied covenant of good faith and fair dealing. (Isaacson v. California Ins. Guarantee Assn. (1988) 44 Cal.3d 775, 789, 244 Cal. Rptr. 655, 750 P.2d 297; Pacific States Enterprises, Inc. v. City of Coachella (1993) 13 Cal.App.4th 1414, 1425, 17 Cal. Rptr.2d 68; Peterson Development Co. v. Torrey Pines Bank (1991) 233 Cal.App.3d 103, 116, 284 Cal.Rptr. 367; see also Griffin v. Allstate Ins. Co. (C.D.Cal.1996) 920 F.Supp. 127, 130-131.) "There is no obligation to deal fairly or in good faith absent an existing contract." (Racine & Laramie, Ltd. v. Department of Parks & Recreation (1992) 11 Cal.App.4th 1026, 1032, 14 Cal.Rptr.2d 335.) Thus, Farmers owed no implied good faith duty to convey to Vincent the settlement offer from Jacobs.
Although the insurer in Waller v. Truck Ins. Exchange, Inc., supra, 11 Cal.4th 1, 44 Cal.Rptr.2d 370, 900 P.2d 619, did not defend even under a reservation of rights, we do not believe an insurance carrier should have less exposure merely by refusing at the outset to defend. The insurance carrier in Waller did refuse from the outset to defend its insured because it correctly believed that the insurance policy neither covered nor potentially covered the third party's liability claim. However, Farmers should not be placed in a more precarious position merely because it exercised caution and undertook an investigation and defense for which it had no legal or contractual obligation. That is especially true here where the need to investigate arose primarily from Vincent's misrepresentations that he had not received the initial notice and that he had timely mailed his premium check. Moreover, the settlement offer from Jacobs came before Farmers made an election to defend.
Having undertaken to defend Vincent, Farmers was obligated to provide a proper defense which included the duty to communicate a settlement offer to its insured. (Heredia v. Farmers Ins. Exchange, supra, 228 Cal.App.3d at p. 1360, 279 Cal.Rptr. 511.) However, that duty was not a contractual one but one assumed voluntarily. A person, having no duty initially toward another person, who voluntarily comes to the aid of that person becomes obligated to exercise due care in the performance of the duties undertaken to aid that other person. A volunteer is liable if his failure to exercise due care increases the risk of harm to the other person or harm is suffered because of the other person's reliance upon the undertaking. (Artiglio v. Corning Inc. (1998) 18 Cal.4th 604, 613, 76 Cal.Rptr.2d 479, 957 P.2d 1313; Williams v. State of California (1983) 34 Cal.3d 18, 23, 192 Cal.Rptr. 233, 664 P.2d 137.)
Whether Farmers negligently breached this voluntarily assumed duty is irrelevant, however, in the case at bench, because Jacobs has chosen not to pursue a negligence cause of action and has thereby waived any claim of liability on that basis.
California has allowed liability in special circumstances where there has been no contractual privity. Such liability, however, has been predicated in great measure on the "policy of preventing future harm." (See Biakanja v. Irving (1958) 49 Cal.2d 647, 650, 320 P.2d 16.) The same policy is implicated concerning the concept of quasi-contractual remedies. With respect to a quasi-contract remedy, the law creates an obligation similar to that provided by contract. (Fink v. Goodson-Todman Enterprises, Ltd. (1970) 9 Cal.App.3d 996, 1010, 88 Cal.Rptr. 679.) The purpose of imposing liability in the absence of contractual privity is to discourage improper conduct and provide protection and justice where otherwise there is none. (See Biakanja, supra at p. 651, 320 P.2d 16; see also Fink, supra, at p. 1010, 88 Cal.Rptr. 679.) In the case at bench, however, the remedy of negligence liability was available to Jacobs. We have therefore no need under the circumstances presented here to create a quasi-contractual remedy.
Our Supreme Court in Buss v. Superior Court (1997) 16 Cal.4th 35, 65 Cal.Rptr.2d 366, 939 P.2d 766, recognized a duty to defend an insured as to claims not cognizable *229 under the contract of insurance, finding that the parties, by virtue of the circumstances and actions had rights "implied in law as quasi-contractual, whether or not it has one implied in fact in the policy as contractual." (Buss v. Superior Court, supra at p. 51, 65 Cal.Rptr.2d 366, 939 P.2d 766.) However, in Buss, supra, the critical circumstance was that the insurer was already obligated by contract to defend the insured as to those claims potentially covered by the insurance contract. Here there is no contractual obligation whatsoever. (See Aerojet-General Corp. v. Transport Indemnity Co. (1997) 17 Cal.4th 38, 59, 70 Cal.Rptr.2d 118, 948 P.2d 909.) Therefore, because, as we observed above, Vincent had a negligence remedy available, we have no reason to extend the quasi-contract doctrine to these circumstances. We are then bound to uphold the trial court's judgment in favor of Farmers.

DISPOSITION
The judgment is affirmed.
NOTT, J., and ZEBROWSKI, J., concur.
NOTES
[*] In denying review, the Supreme Court ordered that the opinion be not officially published. (See California Rules of CourtRules 976 and 977).
[1] We note that Vincent stipulated in the present action that he had received this renewal notice, although he had misrepresented to both his insurance agent and the Farmers claims representative investigating the matter that he had never received the November renewal notice.
[2] Jacobs urged in a supplemental trial brief that Farmers had voluntarily extended the due date for the payment of the premium, without interruption of coverage, an additional 15 days to December 27, 1989, so long as the premium was paid by that new due date. According to Jacobs, that new due date was further extended when Vincent telephoned Rendon on December 27 and was purportedly told just to mail it in (which he planned to do that day), but without any new due date for payment specified. Jacobs further argued that the policy had not lapsed and had been renewed without interruption of coverage because on January 5, 1990, two days after Farmers acknowledged receiving payment, Farmers had mailed a notice to Vincent stating the policy was out of force but that if payment had already been made to disregard this notice.