[No. B083598. Second Dist., Div. Three. Nov. 30, 1994.]

SOUTHERN CALIFORNIA RAPID TRANSIT DISTRICT et al.,
Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELS COUNTY, Respondent;
ALLEN LASTER et al., Real Parties in Interest.

**COUNSEL**

Suzanne B. Gifford, Jeffrey J. Lyon, Richard A. Katzman and Charles M. Safer for Petitioners.

No appearance for Respondent.

Carolyn M. Yee for Real Parties in Interest.

**OPINION**

**CROSKEY, J.**—Petitioners Southern California Rapid Transit District (District), Ernesto Fuentes (Fuentes) and Nick Patsaouras (Patsaouras) (collectively, defendants)[1] seek a writ of mandate from this court compelling the trial court to grant their summary judgment motion on the complaint of the real parties in interest, Allen Laster (Laster) and Richard Yeats (Yeats) (collectively, plaintiffs).

This action arose out of the claim by plaintiffs that they were wrongfully terminated by the District from their position as employees hired by the District to investigate fraud, waste and corruption. They alleged that their terminations were in retaliation for reports made by them of suspected forgery, fraud, mismanagement and an official cover-up of such acts in connection with the certification of a minority contractor.

Defendants filed a motion for summary judgment and summary adjudication of issues as to all seven counts filed by Laster and Yeats. Although the trial court agreed with defendants on all but two of the causes of action filed by plaintiffs, it denied summary relief with respect to their second cause of action (wrongful termination in retaliation for reporting illegal conduct) and their fourth cause of action (wrongful termination in violation of First Amendment free speech rights).

[1]As we briefly explain at the conclusion of this opinion, there are no facts to suggest that the defendant Patsaouras in any way has liability on the claims asserted by plaintiffs. There is simply no evidentiary justification for concluding that he should remain a party defendant. We will therefore grant the petition as to him; thus, our use of the collective term "defendants" will have reference only to the District and Fuentes.

We conclude that issues of fact do exist with respect to plaintiffs' claims of (1) retaliatory termination in violation of a fundamental statutory public policy and (2) infringement of their First Amendment right of free speech in violation of the Civil Rights Act (42 U.S.C. § 1983). We also reject defendants' qualified immunity claims under both state and federal law. We therefore deny the requested writ relief.

### FACTUAL AND PROCEDURAL BACKGROUND

The District was, at the times relevant to this matter, a governmental agency created by statute to plan and operate mass transit in Los Angeles County. (Pub. Utilities Code, § 30001 et seq.)[2] Patsaouras and Fuentes were officials of the District. Patsaouras held the position of president of the District's Board of Directors; Fuentes was the District's Inspector General.

On February 25, 1988, the District's board of directors authorized its inspector general to direct a broad comprehensive program of (1) contract audits, (2) management, operational and performance audits and (3) investigations. Pursuant to a directive of the board, all personnel in the Office of Inspector General (OIG) were *exempt* from the District's noncontract personnel policy and served at the pleasure of the inspector general. Such exemption was called to the attention of new OIG personnel by a written notice which expressly stated that the employment was "at-will" and that the "District has the right to discharge them for any reason whatever, with or without good cause." Plaintiffs, who were career law enforcement investigators, were hired by the OIG in 1989 to serve in that capacity; Laster was hired on October 23 and Yeats on November 6. Each was given a copy of this "Exempt Employment Status" notice at the time that they were hired. They each signed a statement that they had read and understood it.[3]

During the period of their employment they were given various investigative assignments. One involved a claim made by a member of the public on February 8, 1990, at a meeting of the District's board, that a company called Communications International Inc. (CII) had been improperly certified as a

---

[2]It has since been replaced by a new agency, the Los Angeles County Metropolitan Transit Authority (MTA). (Pub. Utilities Code, § 130050.2 et seq.)

[3]However, in their declarations filed in opposition to defendants' motion, plaintiffs asserted that in preemployment interviews they were told by Fuentes that their employment would be a continuing one, absent good cause. They each claim that assurance was given by Fuentes that they would not be subject to layoff. They acknowledge that they signed the exemption notice; but Laster asserts he was told that he understood it did not apply to employees in his salary grade and Yeats states that he simply assumed the notice was consistent with the oral statements regarding continuing employment which had been made to him. We do not regard such self-serving assertions as any more persuasive than did the trial court when it granted defendants a summary adjudication on plaintiffs' breach of contract claim.

"Disadvantaged Business Enterprise" (DBE). Because the District receives substantial federal funding, federal regulations require that a certain percentage of contracting opportunities be provided to DBE's.

The charge which was publicly made was that CII was ineligible for DBE status and that a recertification letter sent by the District to CII was a forgery. Plaintiffs commenced an investigation of this charge and determined that it had substance.[4]

Plaintiffs were assigned to investigate the allegation that the signature stamp of one of the District's certifying officials, one Alvin Rivera, had been utilized without his approval and despite his protestations, to recertify CII as a minority-owned, disadvantaged business enterprise. During the course of the investigation, plaintiffs discovered that CII had initially been certified by the District, even though it did not possess a California contractor's license in its own name, and utilized a nonminority person as its contractor license holder, suggesting the company might be a "front" rather than a bona fide minority-owned business. They also found that CII had boasted in its 1989 prospectus that it had done a gross volume of business exceeding $199 million, an amount far in excess of the federal regulatory $14 million gross volume qualifying standard for a DBE. A Dun & Bradstreet report also indicated that CII had reportable earnings in excess of the gross volume standards.

According to plaintiffs, the CII file that the District maintained contained neither tax returns for the past three years nor any other documentation indicating its financial eligibility for disadvantaged status. Plaintiffs requested documents from CII and the District's office of equal employment opportunity (EEO) which they hoped would clear up questions about CII's status. However, CII declined to supply any documents. Walter Norwood, the EEO director, also refused to provide plaintiffs any access to the documents they had requested, notwithstanding a District board directive which provided that, in conducting investigations, "the Inspector General, and staff of the Inspector General, are authorized to have full, free and

---

[4]The information regarding their investigation comes from plaintiffs' declarations. The statements made by plaintiffs are not disputed by defendants; indeed, we have searched defendants' briefs in vain for any mention of the misconduct which plaintiffs claim to have discovered. Defendants have contented themselves with a broad hearsay objection to plaintiffs' declarations. However, that objection would not appear to be well taken since the recitation of the "facts" developed by plaintiffs' investigative activities is not offered for the truth of the matters set out therein. Rather, it is offered to demonstrate what action plaintiffs took and what they told their superiors about their investigative activities and the conclusions which they had reached which, in their view, led to the wrongful termination of their employment. In any event, the record does not reflect that the trial court ever ruled on the objection.

unrestricted access to all District functions, records, property, and personnel."

Plaintiffs reported these events to Fuentes and informed him that they suspected a violation of the law, specifically, forgery. (Pen. Code, § 470.) Plaintiffs also discussed the case with the Los Angeles County Sheriff's Department, which advised them that there appeared to be such a violation and requested that the inspector general send a letter requesting the assistance of the sheriff. When Laster asked Fuentes to sign such a request letter, Fuentes became angry and refused. Plaintiffs also requested that Fuentes employ the assistance of the United States Department of Transportation (DOT) and its Urban Mass Transportation Administration (UMTA), the agencies responsible for overseeing compliance with the regulations relating to DBE's. Fuentes again refused, expressing fear that he would lose *his* job if the matter were made known to the federal agencies. Plaintiffs then spoke to the Los Angeles County District Attorney's Office about their suspicions of a forgery and cover-up.

Rivera (the certifying officer whose signature stamp allegedly had been improperly used) told plaintiffs that Fuentes had spoken to him after plaintiffs' had made their report to Fuentes. According to Rivera, Fuentes told him that his career was "stagnant" with the District and advised him not to cooperate any further with the investigation.

On July 18, 1990, Fuentes told the plaintiffs that he had been advised by an outside investigative firm (which he had hired to look into the CII matter) that he could be guilty of a cover-up. Relenting from his previous refusals, Fuentes stated he would send the case to the district attorney's office where he had previously indicated that he had "friends." However, when Laster stated that Fuentes was named in the plaintiffs' investigative report for making statements to Rivera which Rivera had found intimidating, Fuentes angrily retorted: "Are you accusing me of a crime?" He then ordered plaintiffs to leave his office.

Later that same day, Laster and Yeats were summoned independently to Fuentes' office by armed, uniformed Transit Police officers. There, Fuentes handed each of them a letter informing him that they were fired, *but stating no reason.* Fuentes told them immediately to clean out their desks and leave. The police officers remained with plaintiffs as they cleaned out their desks, then proceeded to escort them—one abreast, and one following—to the personnel office to be processed, and then out the door. This was done in the

full view and presence of coworkers, other District employees and members of the public.[5]

Plaintiffs claim, and defendants do not dispute, that they were *never* given any reason for their termination. Indeed, it is defendants' position that no reason or explanation was required. Similarly, there was never any hearing provided. As a result of plaintiffs' inability to articulate any given reason for their termination by the District, plaintiffs claim they have not been able to gain comparable employment in the law enforcement field.

On June 26, 1991, nearly one year after their termination, plaintiffs filed this action. They alleged seven separate causes of action.[6] However, we are only concerned here with two of them. As to the others, the trial court granted the defendants' motion, filed on March 15, 1994, for summary adjudication and plaintiffs have not sought writ relief. Plaintiffs' allegations of a wrongful discharge in violation of public policy (count 2) and civil rights violation (count 4) were found by the trial court, on April 18, 1994, to present issues of fact which would have to be tried.[7]

Defendants then sought writ relief in this court. On May 17, 1994 we issued an alternative writ of mandate and an order staying the trial of the action.

---

[5]Plaintiffs' terminations were subsequently reported in the Los Angeles Times in an article, entitled *D.A. Probing Pacts Given Out by RTD* (Krikorian, *D. A. Probing Pacts Given Out by RTD* (July 21, 1990) p. B3, col. 5). The article stated that the district attorney's office was investigating District employees involved in charges that CII's disadvantaged business certification had been forged. Among matters reported to be under investigation were the "abrupt firing" of the two District investigators who had been assigned to investigate the fraud.

[6]Specifically, the seven counts were, (1) discriminatory retaliation (violation of Gov. Code, § 12940 et seq.), (2) breach of public policy/statutory violation, (3) intentional infliction of emotional distress, (4) civil rights claim—42 United States Code section 1983, (5) conspiracy to commit civil rights violation, (6) breach of contract (against the District only), and (7) fraud and deceit (against the District only).

[7]The court stated in its minute order of April 18, 1994, (1) as to count 2 "a possible section 12653(a) of the Government Code was violated, pursuant to testimony declarations of plaintiffs" and (2) as to count 4, the "cause of action re civil rights is denied pursuant to grounds in the opposing party papers." While we do not regard these explanations as sufficient compliance with Code of Civil Procedure section 437c, subdivision (g) (i.e., there is no specification of "one or more material facts . . . as to which the court has determined there is a triable controversy"), we nonetheless have decided, in the interests of judicial economy, to reach the merits of defendants' petition.

A proposed order which would have satisfied the requirements of Code of Civil Procedure section 437c, subdivision (g), was prepared by plaintiffs' counsel and submitted to the attorneys for defendants. However, it was ignored. Defendants' counsel simply prepared a notice of ruling to which was attached a copy of the court's inadequate minute order. This was then filed. For this additional reason, we see no reason to entertain defendants' technical objections to the form of the trial court's ruling.

## CONTENTIONS OF THE PARTIES

Plaintiffs argue that they were wrongfully terminated in violation of applicable whistleblower statutes and that the defendants have no qualified immunity so as to avoid liability thereon. They also assert the defendants' action violated their civil rights in violation of 42 United States Code section 1983 (by (1) infringing on their First Amendment right to speak out on a public wrong and (2) denying them their procedural due process rights with respect to the termination) and that no basis exists for qualified immunity as to this claim either. They contend that the trial court found that one or more triable issues of material fact existed with respect to each of these two counts. They dismiss defendants' argument that the court failed to rule on their qualified immunity defense. The plaintiffs contend that while the court made no specific ruling on defendants' qualified immunity claims, they were implicitly rejected in the court's denial of the defendants' motion for summary adjudication.

Defendants, on the other hand, insist that they are entitled to the benefit of a qualified immunity with respect to both of plaintiffs' remaining claims. They argue that the trial court erred in failing to make a specific ruling on this issue but, in any event, upon this court's de novo consideration of the matter, defendants should be held entitled to a summary adjudication affirming their immunity defenses. Defendants also argue that plaintiffs' claims have no substantive merit: (1) Government Code section 12653, subdivision (a), has no application to this case since there is no issue of a "false claim"; and (2) as plaintiffs have not shown any violation by the defendants of any property right, constitutional liberty interest or infringement of a First Amendment right, they cannot successfully assert a violation under 42 United States Code section 1983.

## DISCUSSION

### 1. *Standard of Review*

Defendants argue that the trial court improperly denied their motion for summary adjudication. ■ In reviewing an order granting, or denying, a motion seeking a summary adjudication of particular issues, we are governed by the rules applicable generally to a review of summary judgments. (*Heredia* v. *Farmers Ins. Exchange* (1991) 228 Cal.App.3d 1345, 1353 [279 Cal.Rptr. 511].)

"Summary judgment is properly granted when the evidence in support of the moving party establishes that there is no issue of fact to be tried.

[Citations.] The trial court must decide if a triable issue of fact exists. If none does, and the sole remaining issue is one of law, it is the duty of the trial court to determine the issue of law. [Citation.] [¶] Appellate review of summary judgment is limited to the facts contained in the documents presented to the trial court. This court exercises its independent judgment as to the legal effect of the undisputed facts disclosed by the parties' papers. [Citations.] In so doing, we apply the same three-step analysis required of the trial court: We first identify the issues framed by the pleadings, since it is these allegations to which the motion must respond. Secondly, we determine whether the moving party has established facts which negate the opponents' claim and justify a judgment in the movant's favor. Finally, if the summary judgment motion prima facie justifies a judgment, we determine whether the opposition demonstrates the existence of a triable, material factual issue." (*Torres* v. *Reardon* (1992) 3 Cal.App.4th 831, 836 [5 Cal.Rptr.2d 52].)

"The moving party's affidavits are strictly construed by the trial court, and the opponent's affidavits are liberally construed; doubts about the propriety of granting the motion are resolved by denying summary judgment, due to the drastic nature of the procedure. [Citation.] 'Where as in the case at bar, *a defendant* seeks summary judgment, his declarations and evidence must either establish a complete defense to plaintiff's action or demonstrate an absence of an essential element of plaintiff's case. If defendant establishes the foregoing, and the plaintiff's declaration in reply does not show that there is a triable issue of fact with respect to that defense or that an essential element exists, the summary judgment should be granted. [Citation; italics in original.]" (*Stratton* v. *First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1083 [258 Cal.Rptr. 721].)

## 2. *A Triable Issue of Fact Does Exist With Respect to Plaintiffs' Wrongful Termination Claim*

The trial court denied the motion for summary judgment as to the second cause of action based on the finding of a "possible violation" of section 12653 of the Government Code.[8] The relevant portions of that section provide: "(a) No employer shall make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency or from acting in furtherance of a false claims action, including investigating, initiating, testifying, or assisting in an action filed or to be filed under section 12652. [¶] (b) No employer shall discharge, demote, suspend, threaten, harass, deny promotion to, or in any other manner discriminate against, an employee in the terms and conditions

---

[8]Unless otherwise indicated, all statutory references are to the Government Code.

of employment because of lawful acts done by the employee on behalf of the employee or others in disclosing information to a government or law enforcement agency or in furthering a false claims action, including investigation for, initiation of, testimony for, or assistance in, an action filed or to be filed under Section 12652." Subdivision (b) might properly be characterized as the "whistleblower" provisions of the false claims statute.

■ We reject defendants' arguments that this case does not involve a "false claim" within the meaning of section 12653. A claim is defined to include any request for "money, property, or services" from the state or any political subdivision.[9] As we understand this record, CII apparently provided false documentation to the District to justify its claimed status as a DBE. Such status would entitle it to be considered for a special "set aside" contract; such a contract, if received, would doubtless constitute property received from the state or a political subdivision thereof.

While we have discovered no case which has considered the issue, we see no reason not to broadly construe this statutory provision so as to give the widest possible coverage and effect to the prohibitions and remedies provided in section 12653.[10] It is fundamental that a statute must be construed in the manner that will best effect its purpose. (*Webster* v. *Superior Court* (1988) 46 Cal.3d 338, 344 [250 Cal.Rptr. 268, 758 P.2d 596]; *California*

[9]The statutes relevant to plaintiff's whistleblower claim, including section 12653, are found in title 2, division 3, chapter 6, article 9 of the Government Code which deals with "False Claims Actions." Section 12650 provides in relevant part: "For purposes of this article: [¶] (a) 'Claim' includes any request or demand for money, property, or services made to any employee, officer, or agent of the state or of any political subdivision, or to any contractor, grantee, or other recipient, whether under contract or not, if any portion of the money, property, or services requested or demanded issued from, or was provided by, the state (hereinafter 'state funds') or by any political subdivision thereof (hereinafter 'political subdivision funds')."

This same section also defines a "political subdivision" as including "any city, city and county, county, tax or assessment district, *or other legally authorized local governmental entity* with jurisdictional boundaries." (Italics added.) The District clearly qualifies as a political subdivision.

Section 12651 provides for a treble damage action (plus civil penalties) for the knowing or fraudulent presentation of a false claim. Section 12652 authorizes and directs state and local prosecuting agencies to diligently investigate violations of section 12651 and, where appropriate, to bring a civil action.

[10]Subdivision (c) of section 12653 provides remedies to employees who are victimized by employers who violate subdivision (b): "(c) An employer who violates subdivision (b) shall be liable for all relief necessary to make the employee whole, including reinstatement with the same seniority status that the employee would have had but for the discrimination, two times the amount of back pay, interest on the back pay, compensation for any special damage sustained as a result of the discrimination, and, where appropriate, punitive damages. In addition, the defendant shall be required to pay litigation costs and reasonable attorneys' fees. An employee may bring an action in the appropriate superior court of the state for the relief provided in this subdivision."

*Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836].) This principle of construction applies with particular force when the statute exists for a public purpose. (*Pulcifer* v. *County of Alameda* (1946) 29 Cal.2d 258, 262 [175 P.2d 1] ["When the object is to subserve some public purpose, the provision may be held directory or mandatory as will best accomplish that purpose. . . ."]; *Calaveras County* v. *Brockway* (1866) 30 Cal. 325, 343 [same].) As a statute obviously designed to prevent fraud on the public treasury, section 12653 plainly should be given the broadest possible construction consistent with that purpose.

Here, plaintiffs not only reported to their superiors at the District, but also to several law enforcement agencies. Those reports to outside law enforcement agencies, including reports that the EEO director Norwood may have participated in a cover-up and that Fuentes may have engaged in the improper intimidation of a witness, are alleged to be the principal reasons which caused Fuentes to terminate plaintiffs.

██ A wrongful termination action is viable where the employee alleges he was terminated for reporting illegal activity which could cause harm, not only to the interests of the employer but also to the public. (*Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 670-671 [254 Cal.Rptr. 211, 765 P.2d 373]; *Shoemaker* v. *Myers* (1992) 2 Cal.App.4th 1407, 1418-1420 [4 Cal.Rptr.2d 203].) An action brought under the whistleblower statute is inherently such an action. (*Shoemaker* v. *Myers, supra,* 2 Cal.App.4th at p. 1418.) The illegal activity which allegedly occurred here gave preference to a contractor which was not qualified as a DBE. Such activity threatened to harm not only legitimate DBE's which would be deprived of the opportunity to obtain a contract under the program, but also the general public. The rationale of *Foley* and *Shoemaker* would allow the claim for wrongful termination in violation of public policy. The *Shoemaker* court commented, "It is difficult to imagine an activity more suffused with the public interest than the investigation and exposure of wrongdoing in public employment[.]" (*Id.* at p. 1420.)

Defendants do not challenge the contention that the terminations were in violation of public policy. Instead, they argue that the terminations were discretionary acts performed by Fuentes in his capacity as plaintiffs' supervisor, and claim immunity pursuant to Government Code section 820.2. That section provides, "[A] public employee is not liable for an injury resulting from his act or omission where [an] act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

Defendants insist that Fuentes had discretion to terminate plaintiffs in the exercise of his managerial authority regarding personnel administration, and

defendants therefore are immune from suit even for a termination in violation of a fundamental public policy.

The overlap between the immunity provisions, a whistleblower statute and wrongful termination (*Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330]) was discussed in *Shoemaker* v. *Myers*, *supra*, 2 Cal.App.4th 1407, which interpreted Government Code section 821.6, a similar statute. It provides immunity to public employees against a malicious prosecution action based upon a threat, initiation, or prosecution of a judicial action against another public employee for the purpose of preventing that person from reporting illegal activities.

*Shoemaker* found the immunity statute barred the wrongful termination cause of action insofar as it raised claims under *Tameny*, but found it did not apply to provide immunity against liability to state employees who had terminated a department investigator in violation of the whistleblower statute. (*Shoemaker* v. *Myers*, *supra*, 2 Cal.App.4th at pp. 1423-1425.) While we have a different whistleblower statute involved here (i.e., § 12653) than was involved in *Shoemaker*, the principle is the same, and so is the result. To recognize that Fuentes's discharge of plaintiffs was simply a discretionary act to which qualified immunity applied, even though such discharge was a retaliatory act expressly prohibited by section 12653, would emasculate the entire effect and purpose of the statute. (Cf. *Shoemaker*, *supra*, at p. 1425.)

Here, the trial court found that the second cause of action was based on a whistleblower claim and therefore is not barred. There is no requirement that the trial court specifically list in its minute order that it had considered the immunity statute and found it inapplicable. The finding is implied in the order denying the motion based upon the finding of a "possible violation" of a fundamental public policy in retaliation for plaintiffs' whistleblower activities. (*Summers* v. *City of Cathedral City* (1990) 225 Cal.App.3d 1047, 1070-1071, fn. 19 [275 Cal.Rptr. 594].)

3. *A Triable Issue of Fact Exists With Respect to Plaintiffs' Cause of Action for Violation of 42 United States Code section 1983*

■ Defendants do not dispute that when an official of a government agency acts in accordance with established policy, or acts in a way which fairly can be said to carry out or further official policy, then that governmental agency, as well as the official may be responsible under 42 United States Code section 1983 for an invasion of the civil rights of the plaintiff which result from the official's acts. (*Monell* v. *New York City Dept. of Soc. Serv.* (1978) 436 U.S. 658, 690 [56 L.Ed.2d 611, 635, 98 S.Ct. 2018].) This

is a claim which may be prosecuted in state court. (*Brown* v. *Pitchess* (1975) 13 Cal.3d 518, 521-523 [119 Cal.Rptr. 204, 531 P.2d 772].)

Here, the District is clearly a local public entity, and it is not disputed that Fuentes was a highly placed official of the District. Indeed, he was vested with broad authority respecting investigations of the very kind of misconduct which plaintiffs allegedly uncovered and reported to him. If he terminated them in retaliation for their report of such activity, it is not at all clear that such an apparent cover-up was not in furtherance of the District's official policy. Defendants have declined to address the merits of plaintiffs' investigation. Given the evidence plaintiffs claim to have discovered, and assuming arguendo its truth, it could well be concluded that the District was giving special contract consideration to an entity not entitled thereto. We do not say that is so, *but on this record* an issue of fact on the point has clearly been raised.

However, did the conduct of Fuentes and the District violate any of plaintiffs' civil rights? Plaintiffs argue that it infringed their First Amendment right of free speech and violated their liberty interest under the 14th Amendment. We believe the First Amendment argument has merit.

### a. *General Principles*

■ The First Amendment protects speech by public employees that touches on matters of public concern. (*Waters* v. *Churchill* (1994) 511 U.S. ___ [128 L.Ed.2d 686, 694-695, 114 S.Ct. 1878, 1884]; *Rankin* v. *McPherson* (1987) 483 U.S. 378, 393 [97 L.Ed.2d 315, 330, 107 S.Ct. 2891]; *Connick* v. *Myers* (1983) 461 U.S. 138, 144-146 [75 L.Ed.2d 708, 717-720, 103 S.Ct. 1684]; *Pickering* v. *Board of Education* (1968) 391 U.S. 563, 574 [20 L.Ed.2d 811, 820-821, 88 S.Ct. 1731].) The government as an employer has broader powers respecting its employees' speech than the government as sovereign has respecting the speech of citizens. (*Waters* v. *Churchill, supra,* 511 U.S. at p. ___ [128 L.Ed.2d at p. 697, 114 S.Ct. at p. 1886]; *Connick* v. *Myers, supra,* 461 U.S. at pp. 150-152 [75 L.Ed.2d at pp. 722-724].) Nevertheless, a government agency may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in free speech. (*Rankin* v. *McPherson, supra,* 483 U.S. at p. 383 [97 L.Ed.2d at pp. 323-324]; *Connick* v. *Myers, supra,* 461 U.S. at p. 142 [75 L.Ed.2d at pp. 716-717]; *Pickering* v. *Board of Education, supra,* 391 U.S. at p. 574 [20 L.Ed.2d at pp. 820-821].)

In determining whether a discharge impermissibly infringed upon the employee's First Amendment rights, the threshold question is whether the

employee's speech related to a matter of public concern. (*Rankin* v. *McPherson, supra,* 483 U.S. at p. 385 [97 L.Ed.2d at pp. 324-325]; *Connick* v. *Myers, supra,* 461 U.S. at pp. 147-148 [75 L.Ed.2d at pp. 720-721].) This question is "determined by the content, form and context of a given statement, as revealed by the whole record." (*Connick* v. *Myers, supra,* 461 U.S. at pp. 147-148 [75 L.Ed.2d at p. 720].) In applying this test, courts have routinely treated speech which criticizes the substantive operations of the governmental agency as a matter of public concern. (See, e.g., *Waters* v. *Churchill, supra,* 511 U.S. at p. __ [128 L.Ed.2d at pp. 698-699, 114 S.Ct. at p. 1887] [summary judgment in favor of public hospital improperly granted, where a conversation for which nurse was terminated allegedly included some statements criticizing a hospital policy which the nurse believed threatened patient care, and the evidence did not establish whether those statements or others, not of public concern, led to the termination]; *Pickering* v. *Board of Education, supra,* 391 U.S. at p. 572 [20 L.Ed.2d at pp. 819] [teacher could not be terminated for writing letters concerning school funding]; *Patrick* v. *Miller* (10th Cir. 1992) 953 F.2d 1240, 1247 [summary judgment properly denied where city finance director alleged termination for opposing discriminatory employment practices]; *Vasbinder* v. *Ambach* (2d Cir. 1991) 926 F.2d 1333, 1339 [state educational employee's alleged termination for contacting the FBI about possible fraud by a contractor actionable]; *Manhattan Beach Police Officers* v. *Manhattan Beach* (9th Cir. 1989) 881 F.2d 816, 818-819 [summary judgment properly denied where police officers alleged denial of promotions for criticizing inadequate police department staffing]; *McKinley* v. *City of Eloy* (9th Cir. 1983) 705 F.2d 1110, 1111 [valid claim was stated under 42 U.S.C. § 1983 by probationary police officer who alleged sanction for critical statements about pay for police officers and relationship of city and police union].)

The importance of informing the citizenry of the workings of government underlies the special protection given by the courts to speech by public employees which concerns the public business. As the Supreme Court explained in *Waters* v. *Churchill, supra,* "[g]overnment employees are often in the best position to know what ails the agencies for which they work; public debate may gain much from their informed opinions." (511 U.S. at p. __ [128 L.Ed.2d at p. 698, 114 S.Ct. at p. 1887]; see also *Pickering* v. *Board of Education, supra,* 391 U.S. at pp. 571-572 [20 L.Ed.2d at pp. 819] ["On such a question [as school funding] free and open debate is vital to informed decision-making by the electorate. Teachers are, as a class, the members of a community most likely to have informed and definite opinions as to how funds . . . should be spent. Accordingly, it is essential that they be able to speak out freely on such questions without fear of retaliatory dismissal."].)

If it is determined that speech, which an employee alleged caused his termination, did concern matters of public concern, the court must then

"balance . . . the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, promoting the efficiency of the public services it performs through its employees." (*Pickering* v. *Board of Education, supra,* 391 U.S. at p. 568 [20 L.Ed.2d at p. 817].) In applying this test, the court must consider facts concerning "the manner, time and place of the employee's expression . . . the context in which the dispute arose . . . . [Citations.] . . . [And] whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." (*Rankin* v. *McPherson, supra,* 483 U.S. at p. 388 [97 L.Ed.2d at p. 327]; see also *Waters* v. *Churchill, supra,* 511 U.S. at p. __ [128 L.Ed.2d at pp. 697-699, 114 S.Ct. at p. 1886-1887].)

The concern for disruptive speech has been recognized as far less where, as here, an employee "decides to express his views privately rather than publicly." (*Givhan* v. *Western Line Consol. Sch. Dist.* (1979) 439 U.S. 410, 414 [58 L.Ed.2d 619, 623, 99 S.Ct. 693]; see also *Patrick* v. *Miller, supra,* 953 F.2d at p. 1248 [record disclosed no evidence that former city finance director's statements to other city officials, and not to the public, interfered with city operations, personnel relations, or finance director's job performance]; *Vasbinder* v. *Ambach, supra,* 926 F.2d at p. 1340 [there was no showing that Vasbinder's report to the FBI impeded the efficiency of defendant agency's operations].)

The third inquiry is whether the termination or other adverse employment action was taken in retaliation for the speech. (*Waters* v. *Churchill, supra,* 511 U.S. at p. __ [128 L.Ed.2d at pp. 703-704, 114 S.Ct. at p. 1891] [summary judgment erroneously granted because "there remains the question whether [plaintiff] was actually fired because of those statements, or because of something else"]; *Givhan* v. *Western Line Consol. Sch. Dist., supra,* 439 U.S. at p. 417 [58 L.Ed.2d at pp. 625-626] [defense that employee was fired for another reason called for a factual determination which could not be resolved on the record before the reviewing court].)

b. *The Trial Court Properly Found Triable Issues of Material Fact Presented on Plaintiffs' First Amendment Claim*

■ Plaintiffs' declarations establish that they not only had criticized Fuentes, but also had suggested that the District's EEO office's involvement in a possible forgery. In addition, they had called attention to the possible complicity of EEO Director Norwood in covering up information relevant to

the investigation. These criticisms were based upon independent findings of the plaintiffs and were not, as defendants assert in their petition, merely duplicative of the underlying public complaint. In fact, their findings appear to confirm that plaintiffs were summarily terminated after raising allegations of a cover-up and reporting criticism of Fuentes for his alleged role in intimidating a key witness.

The content, form and context of plaintiffs' statements, without a doubt, constitute matters of public, rather than personal, concern. No substantial issue arises under these facts as to disruption of the workplace resulting from plaintiffs' speech activity. The statements made by plaintiffs were, after all, made in the context of, and were a logical extension of, the very investigation which they had been assigned to undertake.

As to whether the termination was retaliatory, triable issues of material fact are presented by (1) the fact that plaintiffs both had exemplary employment records, (2) the absence of any other cause for their termination, and (3) the factual circumstances of the termination itself, including the close proximity between their statements and their termination.

With respect to plaintiffs' contention that there was also a violation of their liberty interests, we agree with the defendants' position. The record simply discloses no factual basis to support such a claim. While defendants had the right to terminate plaintiffs at any time, they could not do so for retaliatory reasons. Such limitation is critical to the wrongful discharge and First Amendment issues already discussed. However, with respect to the liberty issue, plaintiffs had to demonstrate that some charge of misconduct had been asserted which caused such a stigma to their reputation that it impaired their ability to make a living. (See *Paul* v. *Davis* (1976) 424 U.S. 693, 701-702 [47 L.Ed.2d 405, 413-414, 96 S.Ct. 1155]; *Gray* v. *City of Gustine* (1990) 224 Cal.App.3d 621, 629 [273 Cal.Rptr. 730].) Plaintiffs' argument that Fuentes's act of having them escorted out the District's office is sufficient to meet this test is not persuasive. No issue of fact is presented on this theory.[11]

■ As they did with plaintiffs' whistleblower claim, defendants again assert a defense of qualified immunity, this time under federal law. However, the qualified immunity under federal law upon which the defendants rely here does not apply if their actions violated a clearly established

---

[11]We also concur with defendants' argument that their actions did not impact a property interest of plaintiffs. Plaintiffs were clearly "at-will" employees and they had no property right to continued employment, as the trial court found when it summarily adjudicated their breach of contract claim. It would appear that plaintiffs agree as they did not pursue their trial court arguments on the point in their brief to this court.

statutory or constitutional right of which a reasonable person should have known. (*Harlow* v. *Fitzgerald* (1982) 457 U.S. 800, 818 [73 L.Ed.2d 396, 410-411, 102 S.Ct. 2727] State officials will be denied immunity where the "contours of the right" were "sufficiently clear that a reasonable official would understand that what he is doing violates that right." (*Anderson* v. *Creighton* (1987) 483 U.S. 635, 640 [97 L.Ed.2d 523, 531, 107 S.Ct. 3034].)

The issue of immunity is a matter which is properly resolved by way of a motion for summary judgment. (*Harlow* v. *Fitzgerald, supra,* 457 U.S. at pp. 816-818 [73 L.Ed.2d at pp. 409-411].) As the Supreme Court put it in *Mitchell* v. *Forsyth* (1985) 472 U.S. 511 [86 L.Ed.2d 411, 105 S.Ct. 2806]: "An appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim. All it needs to determine is a question of law, whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions . . . ." (472 U.S. at p. 528 [86 L.Ed.2d at p. 426].)

Here, the alleged violations of the plaintiffs' First Amendment rights occurred in 1990. At that time, it was established beyond any reasonable dispute that an adverse employment decision by a governmental agency based upon constitutionally protected speech by the employee violates the First Amendment. (*Rankin* v. *McPherson, supra,* 483 U.S. at p. 383 [97 L.Ed.2d at pp. 323-324]; *Connick* v. *Myers, supra,* 461 U.S. at p. 142 [75 L.Ed.2d at pp. 716-717] ["For at least 15 years it has been settled that a State cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression."].) It was equally well established that the kind of speech for which the plaintiffs were allegedly terminated was constitutionally protected. (*Pickering* v. *Board of Education, supra,* 391 U.S. at pp. 571-572 [20 L.Ed.2d at pp. 818-819].) The trial court evaluated the defendants' claim of immunity under the appropriate standard and properly found there was no basis for immunity.

### 4. *The Defendant Patsaouras Has No Liability*

As to the defendant Patsaouras, the summary judgment should have been granted. There is no evidentiary showing whatever that he was involved in this matter. Nor, as plaintiffs conceded at oral argument, is there any actual claim that he played a part in it. Thus, no triable issue of material fact exists with respect to his liability.

### DISPOSITION

The alternative writ is discharged and the order staying the trial is vacated. The petition for a writ of mandate of the defendant Patsaouras is granted; the

trial court shall be directed to vacate its order denying Patsaouras's motion for summary judgment and to enter instead an order granting such motion. The petition for a writ of mandate by the defendants District and Fuentes is denied.

Klein, P. J., and Kitching, J., concurred.