YATES, Judge.
On December 10,1998, Kathy Thompson sued the Colbert County Tourism and Convention Bureau (“the Bureau”); its ex *315 ecutive director Susann Hamlin, in both her official capacity and her individual capacity; and members of its board of directors — Tom Pennington, David Johnson, Sue Pilkilton, Arlene Robbins, Martha Sherrill, Jim Couch, and B.J. McVay (“the board members”) — in both their official capacities and their individual capacities. She alleged (1) that she had been wrongfully terminated from her employment with the Bureau, in violation of § 36-25-24, Ala.Code 1975, and (2) that her termination had been done willfully or wantonly, or intentionally, to harass and to inflict emotional distress.
On January 15, 1999, the board members, in both their individual and official capacities, moved to dismiss, or, in the alternative, for a judgment on the pleadings as to the first count, contending that they were entitled to immunity from suit pursuant to § 10-11-1 et seq., Ala.Code 1975. On that same day, Hamlin moved the court for a summary judgment as to both counts. On January 25, 1999, the Bureau moved the court for a summary judgment as to both counts and the board members moved the court for a summary judgment as to count two.
On March 31, 1999, Thompson moved the court to continue the hearing on the motion for a summary judgment, contending that the defendants had failed to respond to certain discovery requests. On April 1, 1999, Thompson responded to the board members’ motion to dismiss, contending that § 10-11-1 et seq., has been superseded by § 36-25-24(d), Ala.Code 1975. On April 5, 1999, Thompson responded to Hamlin and the Bureau’s summary-judgment motions.
On July 14, 1999, the court entered an order dismissing count one as to the board members, holding that they were entitled to immunity from suit based on § 10-11-1 et seq.;[1] entered a summary judgment in favor of Hamlin as to both counts; entered a summary judgment in favor of the Bureau as to both counts; and entered a summary judgment in favor of the board members as to count two. Thompson appealed. This case was transferred to this court by the supreme court, pursuant to § 12-2-7, Ala.Code 1975.
In reviewing the disposition of a motion for summary judgment, we use the same standard the trial court used in determining whether the evidence before it presented a genuine issue of material fact and whether the movant was entitled to a judgment as a matter of law. Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala.1989). Evidence is “substantial” if it is of “such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). This court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Manners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990).
*316 Thompson had been employed with the Bureau for approximately 14 years as a secretary. Hamlin was Thompson’s immediate supervisor. Thompson alleged in her complaint that in January 1998 she met with Tommy Hutchinson, an employee of the State Department of Examiners of Public Accounts, and provided him with information concerning the activities of Hamlin and certain board members. Steve Barnes, an employee of the Ramada Inn motel in Sheffield, ultimately filed a complaint with the State Ethics Commission against Hamlin and certain board members, in February 1998. Thompson alleged that this fact became public knowledge on February 5, 1998, when a story concerning the complaint ran in the local newspaper. On February 10, 1999, following a meeting of the board members, Thompson’s employment with the Bureau was terminated, by a unanimous vote.
Thompson alleged that her employment had been terminated in retaliation for her providing information regarding possible ethics violations by Hamlin and certain board members. Each board member presented an affidavit stating that Thompson’s employment had been terminated for insubordination, excessive use of the office telephone for personal calls, and other reasons that had nothing to do with her supposedly providing information regarding possible ethics violations by Hamlin and certain board members. The board members stated in the affidavits that they were unaware that Thompson had provided any information regarding an ethics complaint before she had been terminated and that they had not learned of this fact until after February 10, 1999. Thompson presented her affidavit and the affidavit of Barnes, which state that they both had discussed with board members Johnson and Couch the information that she had provided to the Department of Examiners of Public Accounts before her termination. Thompson filed a complaint with the Ethics Commission regarding her termination. The Ethics Commission found insufficient evidence to determine whether Thompson’s termination was a violation of the “whistle-blower’s” provision of the state ethics law.
Thompson argues that the court erred in determining that the board members were entitled to immunity from suit as to count one, based on § 10-11-1, et seq., Ala.Code 1975. That section provides:
“The Legislature finds and declares that the services of not-for-profit corporations, organizations, associations, boards, authorities and commissions are critical to the efficient conduct and management of the public, civic and charitable affairs of the citizens of this state. Noncompensated officers, directors, trustees and members of governing bodies of such not-for-profit entities must be permitted to operate without undue concern for the possibility of litigation arising from the discharge of their duties as policymakers.”
Section 10-11-3 provides:
“Any noncompensated officer of a qualified entity shall be immune from suit and not subject to civil liability arising from the conduct of the affairs of such qualified entity except when the act or omission of such officer, which gives rise to a cause of action, amounts to willful or wanton misconduct or fraud, or gross negligence. Provided however, such immunity shall not, except to such extent as may otherwise be provided by law, extend to the qualified entity, to a for-profit subsidiary of such qualified entity or to the officers of such for-profit subsidiary but only to the qualified entity’s officers as defined in this chapter. Nothing contained herein shall be construed to immunize the corporate entity *317 or qualified entity for the acts or omissions of noncompensated officers as defined in this chapter.”
A “qualified entity” includes “[a]ny board, authority or commission the members of which are appointed by the governing body or bodies of any county or municipality.” § 10 — 11—2(l)(e), AIa.Code 1975. An “officer” under this chapter is defined as “[a]ny officer, director, trustee or member of the governing body of a qualified entity who does not receive compensation for serving in such capacity.” § 10-11-2(2), Ala.Code 1975.
The Bureau is a not-for-profit organization established on June 23, 1987, by Ala. Acts 1987, Act No. 87-254 (Reg.Session), for the purpose of attracting conventions and tourism to Colbert County. Section 5 of Act No. 87-254 provides that its members shall be appointed by the cities of Tuscumbia, Sheffield, and Muscle Shoals, as well as Colbert County. Section 5 also provides that its members shall serve without compensation. Count one of the complaint alleges that Thompson was terminated in violation of § 36-25-24, Ala. Code 1975. Count one does not allege that the board members were guilty of any willful or wanton misconduct, or fraud, or gross negligence.
Thompson seems to argue that § 10-11-1 et seq., had been superseded by § 36-25-24, Ala.Code 1975, simply because this section was enacted subsequent to § 10-11-1 et seq. Section 36-25-24, Ala Code 1975, was enacted in 1995; it provides:
“(a) A supervisor shall not discharge, demote, transfer, or otherwise discriminate against a public employee regarding such employee’s compensation, terms, conditions, or privileges of employment based on the employee’s reporting a violation, or what he or she believes in good faith to be a violation, of this chapter or giving truthful statements or truthful testimony concerning an alleged ethics violation.
[[Image here]]
“(d) A supervisor who is alleged to have violated this section shall be subject to civil action in the circuit courts of this state pursuant to the Alabama Rules of Civil Procedure as promulgated by the Alabama Supreme Court.”[2]
A fundamental rule of statutory construction is to ascertain the intent of the Legislature. Mullins v. Alabama Bd. of Pardons & Paroles, 711 So.2d 1019 (Ala.Civ.App.1997). In enacting new legislation, the Legislature is presumed to know the existing law. Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen, 714 So.2d 293 (Ala.1998). Also, specific statutory provisions that relate to specific subjects are understood to be exceptions to general provisions relating to general subjects. Murphy v. City of Mobile, 504 So.2d 243 (Ala.1987). The Legislature specifically declared that the services of not-for-profit organizations are critical to the efficient conduct and management of the public, civic, and charitable affairs of the citizens of this State. Thus, the Legislature extended to the noncompensated directors of such entities immunity from suit except in cases where the act or omission of the director “amounts to willful or wanton misconduct or fraud, or gross negligence.” § 10-11-3, Ala.Code 1975. When the Legislature enacted § 36-25-24, it could have specifically stated that the immunity afforded a noncompensated director of a not-for-profit organization is not available when that director is alleged *318 to have violated the “whistle-blower” provision of § 36-25-24; however, the Legislature chose not to do so. We conclude that the Legislature intended for the non-compensated directors of not-for-profit organizations to have immunity from suit when they are alleged to have violated § 36-25-24, unless the act or omission of the director “amounts to willful or wanton misconduct or fraud, or gross negligence.” Accordingly, the individual board members are entitled to immunity from suit as to count one, pursuant to § 10-11-1 et seq., Ala.Code 1975.
Judge Crawley, in his dissenting opinion, notes that § 36-25-24(d) specifically provides that when a supervisor is alleged to have discharged an employee because of that employee’s having reported a violation of the Ethics Act, that supervisor “shall be subject to civil action in the circuit courts of this state.” Judge Crawley then poses this question: “How much clearer could the legislature have made its intent to abrogate immunity for violators of the whistle-blower’s provision of the Ethics Act?” 782 So.2d. at 321. Judge Crawley goes on to state that this main opinion “would apparently ... fail to protect one who blows the whistle on corruption in a not-for-profit entity.” 782 So.2d at 321. However, as previously noted in this opinion, our Legislature made a specific declaration that the services of not-for-profit organizations are so critical to the efficient conduct and management of the public, civic, and charitable affairs of the citizens of this State, that the Legislature expressly extended immunity to the noneompen-sated directors of such entities, except in cases where the act or omission of the director “amounts to willful or wanton misconduct or fraud, or gross negligence.” § 10-11-3. How much clearer could the Legislature have made its intent to grant immunity to the noncompensated directors of not-for-profit organizations? The dissent suggests that granting immunity to the directors is inconsistent with the purpose of the whistle-blower statute' — on the contrary, it is totally consistent with the Legislature’s intent in enacting § 10-11-1 et seq. The statutory provision found in § 10-11-1 et seq., providing noncompen-sated directors of not-for-profit organizations immunity from suit, is a more specific provision than the general provision found at § 36-25-24(d), which permits supervisors who are alleged to have violated the whistle-blower statute to be subject to a civil action in the courts of this State. Being more specific, the provisions of § 10-11-1 et seq., are to be understood as an exception to the more general provision. Murphy, supra.
Judge Crawley further relies on what we consider to be unpersuasive authority from other jurisdictions for the proposition that a grant of immunity to the board members, pursuant to § 10-11-1 et seq. would, in this case, effectively defeat the “whistle-blower” provision of § 36-25-24(d). This contention is without merit. In both Southern Cal. Rapid Transit Dist. v. Superior Court, 30 Cal.App.4th 713, 36 Cal.Rptr.2d 665 (1994), and Roth v. Veteran’s Admin., 856 F.2d 1401 (9th Cir.1988), the defendant sought to rely on a general qualified immunity available to all public employees and federal officials. The courts concluded that an application of such qualified immunity would effectively defeat the “whistle-blower” protection afforded the public employees. Those cases are distinguishable from the present case. In the present case, the board members sought immunity specifically afforded to a relatively small class of people by the Legislature — noncompensated officers of not-for-profit organizations — rather than a broad grant of immunity available to all public employees and federal officials, as was the case in Southern Cal. Rapid Tran *319 sit and in Roth. A grant of immunity to a small class of individuals that this state’s Legislature has specifically identified as being critical to the efficient conduct and management of the public, civic, and charitable affairs of the citizens of this State will not effectively defeat and thwart the purpose of § 36 — 25—24(d).
Thompson next argues that she did not receive requested discovery before the court entered the summary judgment, and that this fact prevented her from setting forth more specific details related to willful or wanton misconduct, fraud, or gross negligence, which would permit her to proceed with an action against the individual board members pursuant to § 10-11-3, Ala.Code 1975. This argument is without merit. Thompson filed certain interrogatories for Hamlin and the board members when she filed her complaint on December 10, 1998. On January 27, 1999, the court set the defendants’ motions for hearing on April 6, 1999. On March 31, 1999, Thompson moved the court for a continuance of the hearing, contending that the defendants had failed to comply with discovery and that she, therefore, could not respond to the defendants’ motions. The mere pendency of discovery does not bar the entry of a summary judgment; however, if the nonmoving party can demonstrate that the outstanding discovery is crucial to his case, then it is error for the trial court to enter a summary judgment before the discovery has been completed. Reeves v. Porter, 521 So.2d 963 (Ala.1988); Hope v. Brannan, 557 So.2d 1208 (Ala.1989). In order to show that the discovery sought is crucial to his case, the nonmoving party must comply with Rule 56(f), Ala. R. Civ. P., which provides:
“Should it appear from the affidavits of a party opposing the motion that the party cannot, for reasons stated, present by affidavit facts essential to justify the party’s opposition, the court may deny the motion for summary judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.”
“A party seeking the shelter of Rule 56(f) must offer an affidavit explaining to the court why he is unable to make the substantive response required by Rule 56(e).” Hope, 557 So.2d at 1213. Thompson failed to present the court with an affidavit explaining why she was unable to respond to the showing made by the defendants when she moved the court for a continuance, as required by Rule 56(f). Therefore, the court properly entered the summary judgment in favor of the individual board members as to count two.
In support of her motion for summary judgment as to counts one and two of the complaint, Hamlin presented the court with her affidavit, as well as the affidavits of the board members. These affidavits state that at no time did Hamlin recommend or suggest to the board that Thompson be terminated. Board member Pennington stated in his affidavit that he had reason to know that Thompson used the office telephone excessively for personal calls and that she continuously overstepped her employment duties as a secretary, to challenge the authority of the executive director. Pennington stated that Thompson had been admonished regarding her excessive use of the office telephone, but that that conduct had continued. Pennington stated that it was he who had presented this information to the board, and that the information led to a unanimous vote that Thompson be terminated. Hamlin stated in her affidavit that she had no knowledge or reason to suspect that Thompson had provided any information to any person or agency regard *320 ing the possible -violation of the ethics law by certain board members. Thompson failed to rebut the showing by Hamlin that she did not violate the whistle-blower provision of § 86-25-24, and that she had not acted willfully or wantonly, or intentionally to harass or inflict emotional distress upon Thompson. Thompson makes no specific argument in her brief regarding the claims against Hamlin, other than to again argue that she was unable to adequately respond to the motions for summary judgment because discovery had not been completed. Having already determined that Thompson failed to satisfy the requirements of Rule 56(f), Ala. R. Civ. P., we conclude that the court properly entered the summary judgment in favor of Hamlin as to both counts of the complaint.
Finally, in support of its motion for summary judgment, the Bureau again presented the affidavit of each board member.[3] Each member testified by affidavit that Thompson had been terminated for insubordination, excessive use of the office telephone for personal calls, and other reasons unrelated to her supposedly providing information regarding possible ethics violations by Hamlin and certain board members. The board members also stated in their affidavits that they were unaware that Thompson had provided any information regarding possible ethics violations before she was terminated and that they had not learned of this fact until after February 10, 1999. Thompson presented her affidavit and the affidavit of .Barnes, which state that before she was terminated they had both discussed with board members Johnson and Couch the information that Thompson had provided regarding the possible violation of the ethics law. Section 36-25-24(b), Ala.Code 1975, provides:
“(b) Nothing in this chapter shall be construed in any manner to prevent or prohibit or otherwise limit a supervisor from disciplining, discharging, transferring, or otherwise affecting the terms and conditions of a public employee’s employment so long as the disciplinary action does not result from or is in no other manner connected with the public employee’s filing a complaint with the commission, giving truthful statements, and truthfully testifying.”
The Bureau presented a copy of its policy- and-procedure manual, which provides that all employees are employed at will. “[A] contract of employment at will may be terminated by either party with or without cause or justification.” Bell v. South Central Bell, 564 So.2d 46, 48 (Ala.1990). The Bureau presented evidence indicating that Thompson had been terminated from her employment because of insubordination and excessive use of the office telephone for personal reasons. The Bureau also presented evidence indicating that it was unaware that Thompson had provided information regarding possible ethics violations by certain board members to any agency before Thompson was terminated. Thompson presented evidence indicating that before she was terminated two board members were aware that she had provided information regarding possible ethics violations. At best, this only creates a question whether the board members were aware that she had provided information regarding possible ethics violations — it does not create a question as to whether Thompson was terminated for a reason other than insubordination or excessive use of the office telephone for personal reasons. We conclude that Thompson failed to present substantial evidence indicating that she had been terminated from *321 her employment, in violation of the “whistle blower” provision of § 36-25-24, Ala Code 1975, for providing information regarding possible ethics law violations. Accordingly, the court properly entered the summary judgment in favor of the Bureau on both counts of the complaint.
AFFIRMED.
ROBERTSON, P.J., and MONROE, J„ concur.
CRAWLEY and THOMPSON, JJ„ dissent.

. It appears that in dismissing count one as to the board members the court considered matters outside the pleadings; therefore, we will consider that the court entered a summary judgment in favor of the board members. See Boles v. Blackstock, 484 So.2d 1077 (Ala.1986). We further note that Thompson treats the issue in her appellate brief as if the court had entered a summary judgment on that count in favor of the board members.

. "Supervisor,” as defined by § 36-25-1(30), Ala.Code 1975, would include the board members.

. Section 10-11-3, Ala.Code 1975, specifically states that the immunity provided by that chapter does not extend to the qualified entity, in this case the Bureau.