CRAWLEY, Judge,
dissenting.
I respectfully disagree with the conclusion that § 36-25-24, Ala.Code 1975, the whistle-blower’s provision of the Ethics Act, does not supersede § 10-11-3, Ala. Code 1975, the statute that provides immunity for noncompensated officers and directors of not-for-profit corporations. Section 36-25-24(d) specifically states that a supervisor who discharges an employee based on the employee’s having reported an Ethics Act violation “shall be subject to civil action in the circuit courts of this state.” How much clearer could the legislature have made its intent to abrogate immunity for violators of the whistle-blower’s provision of the Ethics Act? Compare Osage Tribal Council ex rel. Osage Tribe of Indians v. United States Dep’t of Labor, 187 F.3d 1174 (10th Cir.1999) (holding that Congress had waived tribal sovereign immunity from suit by enacting the whistle-blower’s provision of the Safe Drinking Water Act, 10 U.S.C. § 1034).
In Osage Tribal Council, the United States Court of Appeals for the Tenth Circuit held that, by enacting the whistle-blower’s provision of the Safe Drinking Water Act, 10 U.S.C. § 1034, Congress had waived the Osage Indian Tribe’s sovereign immunity from suit. The sovereign immunity afforded to Indian tribes is not a “broad grant” of immunity to a large category of people, such as “all public employees and federal officials,” but a narrow allowance to a “relatively small class of people,” in acknowledgment of the fact that “Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers.” Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978).
More important than whether the class afforded immunity is large or small, however, is whether the benefit of immunity for the class is outweighed by the benefit of the whistle-blower’s provision: encouraging the reporting of Ethics Act violations and discouraging retaliation against those who report. Judge Yates’s opinion for the court would apparently protect one who blows the whistle on corruption in a state agency, yet not protect one who blows the whistle on corruption in a not-for-profit entity, when both workers have real fear of job termination. Employment income supports both workers and their families, and the public policy of this State can never sanction the termination of a person’s job because he or she disclosed public corruption, wherever it exists, even in a not-for-profit organization.
The whistle-blower’s statute specifically allows a public employee to sue his supervisor when, the employee alleges, the supervisor has used his official power to retaliate against the employee for reporting ethics violations. Thus, granting the supervisor immunity is totally inconsistent with the purpose of the whistle-blower’s statute. A California District Court of Appeal, addressing a similar issue in Southern California Rapid Transit Dist. v. Superior Court, 30 Cal.App.4th 713, 36 Cal.Rptr.2d 665 (1994), held:
“To recognize that [the supervisor’s] discharge of [the whistle-blowing employee] was simply a discretionary act to which *322 qualified immunity applied, even though such a discharge was a retaliatory act expressly prohibited by [the whistle-blower’s statute], would emasculate the entire effect and purpose of the [whistle-blower’s] statute.”
30 Cal.App.4th at 726, 36 Cal.Rptr.2d at 673. See also Roth v. Veteran’s Admin., 856 F.2d 1401, 1408 (9th Cir.1988) (stating that “[a]n overly broad application of qualified immunity would ‘effectively eviscerate whistle-blower protection for public employees’ ”).
I also disagree with the statement that Thompson “failed to rebut the showing that [Hamlin] did not violate the ‘whistle-blower’ provision of § 36-25-24,” 782 So.2d at 320, and I cannot agree that Thompson did not present substantial evidence in opposition to the Bureau’s showing that she was terminated for reasons other than filing an ethics complaint. I believe Thompson rebutted Hamlin’s showing and presented sufficient evidence for a jury to decide whether she was terminated for providing information regarding an ethics violation. Thompson submitted her own affidavit and the affidavit of Steve Barnes, an employee of the Ramada Inn motel in Tuscumbia.
Thompson’s affidavit states that, in October 1997, three months before the publication of the newspaper article relating to a possible ethics violation, she spoke to board member David Johnson about information she had turned over to the Department of Examiners of Public Accounts, which was investigating ethics violations by the board. According to Thompson, Johnson said he did not want to hear about or see the information. Thompson states that Johnson told her to “do what [she] needed to do.” Thompson’s affidavit also avers that Johnson informed her that, before Thompson was terminated, he and fellow board member Jim Couch had discussed the ethics charges Thompson raised. Finally, Thompson’s affidavit states that on the day she was terminated board member David Johnson telephoned her at home and apologized to her, stating that he and Jim Couch had been “hoodooed” by the rest of the board.
Steve Barnes’s affidavit states that on February 3, 1998, he filed an ethics complaint against Hamlin and the board. His complaint was based on information of which he had personal knowledge, as well as on information provided to him by Thompson. The affidavit further states that, before Thompson was terminated, he (Barnes) spoke on three occasions with board member David Johnson about the information Thompson had provided Barnes. On one of those occasions, Barnes said, Johnson came to Barnes’s place of employment and asked to see the documentation Thompson had turned over to the Department of Examiners of Public Accounts.
Thompson had been employed by the board for 14 years; she was discharged only 5 days after the publication of a newspaper article reporting possible ethics violations by the Bureau. In direct contradiction of the affidavits of all the board members, Thompson says that she discussed her role in the ethics charges with two board members before she was fired. Her claim that she discussed those charges with board member David Johnson was corroborated by the affidavit of Ramada Inn employee Steve Barnes. I believe that the evidence regarding these allegations constitutes substantial evidence entitling Thompson to have a jury decide whether she was fired in retaliation for reporting her employer’s misconduct.
THOMPSON, J., concurs.