Filed 4/12/21 (unmodified opinion attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| PLANET BINGO LLC, | E074759 |
| Plaintiff and Appellant, | (Super.Ct.No. PSC 1600461) |
| v. | ORDER MODIFYING OPINION |
| THE BURLINGTON INSURANCE COMPANY, | [NO CHANGE IN JUDGMENT] |
| Defendant and Respondent. | |

THE COURT

The opinion filed in this matter on March 18, 2021 is modified as follows:

1.  On page 2, in the second full paragraph, the parenthetical "(and Burlington does not dispute)" is deleted and replaced with:

> (and, for purposes of the motion for summary judgment, Burlington did not dispute)

2.  On page 9, in the second full paragraph, the sentence "Burlington did not dispute this." is deleted and replaced with:

> For purposes of the motion for summary judgment, Burlington did not dispute this.

3.  On page 18, in the first full paragraph, the two sentences "As we held in the previous appeal, this denial of coverage was improper. There was at least a potential for coverage,

1

depending on whether Planet Bingo was ultimately sued in the United States or Canada."
are deleted and replaced with:

> As we held in the previous appeal, there was at least a
> potential for coverage, depending on whether Planet Bingo
> was ultimately sued in the United States or Canada.

4.  On page 18, at the end of (and as part of) the first full paragraph, add:

> Thus, at this point, Burlington could be liable for bad-faith
> claims handling, including failure to settle.

Except for these modifications, the opinion remains unchanged.  This modification
does not effect a change in the judgment.


RAMIREZ                           
P.J.


We concur:

McKINSTER                 
J.

SLOUGH                 
J.


2

Filed 3/18/21 (unmodified version)

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| PLANET BINGO LLC, | |
| Plaintiff and Appellant, | E074759 |
| v. | (Super.Ct.No. PSC 1600461) |
| THE BURLINGTON INSURANCE COMPANY, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County. David M. Chapman, Judge. Reversed and remanded with directions.

Angelo & Di Monda and Joseph Di Monda for Plaintiff and Appellant.

Greenberg Traurig and Thomas Holden for Defendant and Respondent.

An electronic gaming device designed and supplied by Planet Bingo, LLC (Planet Bingo) caused a fire in the United Kingdom. Several third parties made demands that Planet Bingo pay their damages resulting from the fire. However, the Burlington

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part V.

1

Insurance Company (Burlington), Planet Bingo's liability insurer, denied coverage. Planet Bingo therefore filed this action for breach of contract and bad faith against Burlington.

In a previous appeal, we held that Burlington's policy did afford coverage, though only if one of the third-party claimants filed suit against Planet Bingo in the United States or Canada. Lo and behold, just such a suit was then filed. Burlington accepted the defense and managed to settle the suit for its policy limits. In this action, the trial court granted summary judgment for Burlington; in essence, it ruled that Burlington had provided all of the benefits due under the policy.

Planet Bingo appeals. It contends that Burlington conducted an inadequate investigation. It also contends that Burlington wrongfully failed to settle the third-party claims; instead, Burlington denied coverage, in the hope that the claimants would sue Planet Bingo in the United Kingdom, which would have let Burlington off the coverage hook. Planet Bingo asserts (and Burlington does not dispute) that it lost profits because the fire claims remained pending and unsettled.

We will hold that Planet Bingo made out a prima facie case that Burlington is liable for failure to settle. (See *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 845 [party can defeat summary judgment by making "a prima facie showing of the existence of a genuine issue of material fact"].) Even though none of the claimants made a formal offer to settle within the policy limits, one subrogee sent a subrogation demand letter; according to Planet Bingo's expert witness, in light of the standards of the

2

insurance industry, this represented an opportunity to settle within the policy limits. We therefore do not address Planet Bingo's claim that Burlington conducted an inadequate investigation. We also do not decide whether lost profits are recoverable as damages, because this issue was not raised below. Finally, in the unpublished portion of this opinion, we will reject Burlington's contention that the statute of limitations had run.

I

STATEMENT OF FACTS

The following facts are taken from the separate statements of material fact and the supporting evidence filed in connection with the motion for summary judgment.

"We accept all facts listed in [Burlington's] separate statement that [Planet Bingo] did not dispute. We also accept all facts listed in [Burlington's] separate statement that [Planet Bingo] *did* dispute, to the extent that (1) there is evidence to support them [citation], and (2) there is no evidence to support the dispute [citation]. Finally, we accept all facts listed in [Planet Bingo's] separate statement, to the extent that there is evidence to support them. [Citation.]" (*Doe v. California Lutheran High School Assn.* (2009) 170 Cal.App.4th 828, 830-831.)

Planet Bingo supplies handheld gaming devices. It designs them, has another company manufacture them to its specifications, and ships them.

Leisure Electronics Limited (Leisure) distributed Planet Bingo's devices in the United Kingdom. The distribution agreement between them provided that any legal proceeding involving the agreement would be brought in England. Leisure leased some

3

of the devices to Beacon Bingo, a/k/a Riva Gaming (Beacon), which operated a bingo hall in London.

Burlington insured Planet Bingo under a commercial general liability policy. The policy applied to an occurrence in the United States or Canada; it also applied to an occurrence elsewhere, but only if (among other things) Planet Bingo's liability was determined either (1) "in a 'suit' on the merits" in the United States or Canada, or (2) "[i]n a settlement [Burlington] agree[d] to."

On September 12, 2008, at 2:40 a.m., there was a fire in the bingo hall. On or before March 26, 2009, Planet Bingo gave Burlington notice of the fire.

Burlington started an investigation under a reservation of rights. At that time, however, it did not actually perceive any coverage issue.

Burlington's "P[lan] O[f] A[ction]" was to obtain whatever evidence Leisure and Bingo had and to determine whether any other parties were potentially liable; it added, "we will then consider having our own I[ndependent] A[djuster] investigate & get our own C[ause] & O[rigin] expert in the UK."

Accordingly, it asked Bingo and Leisure to provide proof that Planet Bingo was liable, including all forensic evidence, along with proof of their damages. It also asked them to preserve all the evidence. Meanwhile, Burlington looked into whether another party (such as Beacon, the manufacturer of the devices, or a parts supplier) might be liable.

4

In June 2009, Leisure notified Burlington that, in its view, Planet Bingo was liable.  It cited two items of evidence:

(1)  The video:  Security video showed that the fire started in the racks where the devices were being charged overnight (although the actual ignition point was hidden behind a partition).

(2)  The Fire Brigade report:  Immediately after the fire, experts representing the London Fire Brigade, Leisure, and Beacon had conducted a joint forensic examination.  They concluded that "the most likely cause of the fire" was the failure of a lithium battery in one of the devices.

Leisure noted that at that time, Beacon was not "actively pursu[ing]" its claim, probably because it was still waiting to see what its total losses were.

In response, Burlington asked Beacon to send it the video along with any forensic evidence.  Again, it asked "the parties to preserve all evidence."

In November 2009,[1] Beacon notified Burlington that its damages totaled £1.6 million (approximately $2.6 million).  It claimed there was "substantial evidence in support of this amount."  At that point, Burlington retained a London-based independent adjuster.

In January 2010, Leisure and Beacon assured Burlington that Beacon's experts still had the device that allegedly caused the fire.

---

[1]     The email from Beacon to Burlington is dated August 2009.  Burlington's claims file, however, indicates that it was received in November 2009.

5

In April 2010, Burlington realized for the first time that it had possible grounds to deny coverage: Its policy applied to the fire only if suit was brought in the United States or Canada, whereas the distribution agreement between Planet Bingo and Leisure required any suit to be brought in England.[2]

Meanwhile, Leisure and Beacon still had not provided Burlington with any forensic evidence nor with any documentary support of their losses.

Thus, also in April 2010, Burlington hired its own cause and origin expert. In May 2010, Burlington's expert issued his report. He had reviewed the video and had spoken to one of the experts responsible for the Fire Brigade report. He conceded that "no physical evidence was found to indicate the precise cause of the fire." Nevertheless, based on the video, and after ruling out other possible causes, he concluded "that the fire started as a result of a fault with the [devices] or their charging racks."[3] In June 2010, he reiterated that there was no possible ignition source other than the devices.

From its expert, Burlington learned for the first time that the London Fire Brigade had disposed of the remains of the devices back in September 2009.

In August 2010, Burlington finally received the Fire Brigade report (from its expert, not from Leisure or Beacon). The report concluded that "the balance of probabilities suggests that the fire was caused by a defective lithium ion battery pack in

---

**2** Beacon, of course, was not a party to the distribution agreement. Moreover, the distribution agreement did not purport to be binding on Leisure's insurers (although they might nevertheless be bound as subrogees).

**3** Planet Bingo supplied the charging racks.

one of the [devices]." In September 2010, Burlington received a copy of the video

(again, from its expert, not from Leisure or Beacon).

In September 2010, Burlington concluded — with no explanation — that Planet

Bingo was *not* liable. It also noted that there were "coverage issues," and that Leisure (or

its insurer) did not seem to be pursuing the claim. However, it did not communicate

these conclusions to Planet Bingo.

Nine months went by, during which Leisure and Beacon did not file suit, and

Burlington conducted little further investigation. During this time, Planet Bingo

complained to Burlington repeatedly that it was losing business because the fire claim

remained unpaid — that Planet Bingo "was getting known as a deadbeat . . . ."

In June 2011, Burlington notified Planet Bingo that "[t]here does not appear to be

any further pursuit against you for the damages," and therefore Burlington was closing its

file.

There was a three-year lull.

In July 2014, attorneys representing AIG Europe Ltd. (AIG) wrote to Planet

Bingo. They reported that Leisure had settled with Beacon for £1.6 million and that AIG

was Leisure's insurer. They demanded that Planet Bingo pay the £1.6 million. They also

stated: "With the objective of avoiding the costs of litigation, our client is prepared to

7

enter into alternative forms of dispute resolution. . . . [T]he options available . . . are discussions and negotiations or mediation. Please confirm which option you agree to."[4]

Planet Bingo's expert on insurance claim handling testified that "[s]uch a letter is routine in industry practice and offers a clear invitation to negotiate a settlement for less than that amount . . . ." Moreover, there is a "very well[-]known industry custom in such subrogation claims of accepting policy limits for a full release o[f] the insured."

Planet Bingo immediately notified Burlington of the claim. In August 2014, Burlington responded by denying coverage, on the grounds that (1) the fire did not occur in the United States or Canada and (2) Planet Bingo had not been sued in the United States or Canada.

In February 2016, Planet Bingo filed this action. The trial court entered judgment on the pleadings for Burlington, on the ground that there was no coverage because the fire had occurred outside the United States or Canada. Planet Bingo appealed. We held that, when Burlington denied coverage, there was at least a potential for coverage, because it was still possible that Planet Bingo might be sued in the United States or Canada. Hence, we reversed and remanded.

---

**4** Planet Bingo asserts that the letter did not demand full payment of the £1.6 million. That is an unreasonable interpretation. The letter stated: "Leisure . . . settled [Beacon's] claim and now seeks to recover its outlay from Planet Bingo." "We are instructed to recover our client's outlay . . . ." It itemized Leisure's "outlay," which totaled £1.6 million. Clearly it did demand full payment, albeit without ruling out the possibility of a settlement.

Meanwhile, Planet Bingo's attorneys contacted AIG and convinced it to sue Planet Bingo in the United States rather than in London. Accordingly, in June 2018, AIG sued Planet Bingo in Riverside Superior Court. Burlington accepted the defense of that action, subject to a reservation of rights. In March 2019, Burlington settled with AIG for $1 million — the policy limits. In the settlement agreement, AIG released any and all claims against Planet Bingo.

Planet Bingo's expert witness testified that the failure to promptly pay the fire claim damaged Planet Bingo's business reputation and ultimately caused its entire business in the United Kingdom to fail; as a result, it suffered lost profits of over $9.3 million. Burlington did not dispute this.

II

STATEMENT OF THE CASE

Planet Bingo filed this action against Burlington in February 2016.[5] The operative (second amended) complaint asserted causes of action against Burlington for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief.

Thereafter, Burlington defended the suit by AIG and settled that suit for the policy limits. This mooted Planet Bingo's claims, to the extent that they were based on failure

---

[5] The complaint also named Planet Bingo's insurance brokers as defendants. Planet Bingo eventually settled with them.

9

to defend or failure to indemnify.[6]  It left only claims arising out of Burlington's prelitigation claims handling — namely, for lost profits based on inadequate investigation and failure to settle.

Burlington filed a motion for summary judgment.  In it, Burlington argued, among other things:

(1)  The action was barred by the statute of limitations.

(2)  Burlington had no prelitigation duty to investigate.

(3)  Burlington conducted a reasonable investigation.

(4)  Burlington's allegedly inadequate investigation did not deprive Planet Bingo of any of the benefits of the policy.

(5)  Burlington had no prelitigation duty to settle because it never received an offer to settle within the policy limits.

After hearing argument, the trial court granted the motion.  It agreed that Burlington was not liable for failure to settle.  It also agreed that Burlington's investigation did not deprive Planet Bingo of any policy benefits.  Regarding the statute of limitations, it ruled, "This argument would have merit but for the fact that Burlington

---

**6**      Planet Bingo did not argue, in opposition to the motion for summary judgment or on appeal, that it should be allowed to proceed on a claim for the attorney fees it had had to incur to obtain the eventual defense and indemnity.  (See generally *Brandt v. Superior Court* (1985) 37 Cal.3d 813.)  Thus, it has forfeited any such contention for purposes of this appeal.  We do not decide whether it has forfeited it for purposes of further proceedings.

10

waived the defense by not properly pleading it."  It therefore entered judgment against Planet Bingo and in favor of Burlington.

III

STANDARD OF REVIEW

"Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.'  [Citation.]" (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof."  (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 850, fn. omitted.)

A moving defendant has the "burden" to "show[] that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to the cause of action."  (Code Civ. Proc., § 437c, subd. (p)(2).)  "Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto."  (*Ibid*.)

"Courts deciding motions for summary judgment or summary adjudication may not weigh the evidence but must instead view it in the light most favorable to the opposing party and draw all reasonable inferences in favor of that party.  [Citations.]" (*Weiss v. People ex rel. Department of Transportation* (2020) 9 Cal.5th 840, 864.)

"Whether the trial court erred by granting [the] motion for summary judgment is a question of law we review de novo.  [Citation.]"  (*Samara v. Matar* (2018) 5 Cal.5th 322, 338.)

IV

PRELITIGATION FAILURE TO SETTLE

Planet Bingo contends that there is a triable issue of fact as to whether Burlington is liable for its prelitigation failure to settle.

"[A] liability insurance policy's express promise to defend and indemnify the insured against injury claims implies a duty to settle third party claims in an appropriate case.  [Citations.]"  (*Kransco v. American Empire Surplus Lines Ins. Co.* (2000) 23 Cal.4th 390, 401.)  "Although an insurance policy normally only carries an express statement of a duty to defend, an insurer's duty to settle is derived from the implied covenant of good faith and fair dealing which is part of any contract [citations]." (*Commercial Union Assurance Companies v. Safeway Stores, Inc.* (1980) 26 Cal.3d 912, 917.)  "[T]he insurer, when determining whether to settle a claim, must give at least as much consideration to the welfare of its insured as it gives to its own interests."  (*Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818.)

In the paradigm case of an insurer's failure to settle, the third-party claimant makes a reasonable settlement offer within the policy limits; the insurer rejects it; the third-party claimant goes to trial; and the trial results in a judgment in excess of the

12

policy limits.  In this situation, the insurer becomes liable for the entire excess judgment.  (E.g., *Samson v. Transamerica Ins. Co.* (1981) 30 Cal.3d 220, 237.)

This case is different, in two respects.  First, a settlement offer within the policy limits was never actually on the table.  In July 2014, AIG demanded payment of £1.6 million — an amount well in excess of the policy limits.  It did also offer to participate in alternative dispute resolution; nevertheless, it never committed to accept any lesser amount.

Second, there was never any excess judgment.  AIG did eventually sue, but Burlington managed to settle that action for the policy limits.  Nevertheless, Planet Bingo claims it was damaged because Burlington's failure to settle before litigation was filed damaged its business reputation and ultimately destroyed its business in the United Kingdom.

In its motion for summary judgment, Burlington argued only the first distinction — the absence of an offer to settle within the policy limits.  It did not rely on the second distinction — the absence of an excess judgment.  It also did not argue that lost profits were not recoverable.[7]  Thus, it would not be appropriate for us to decide these questions.  We leave it open to the trial court to decide whether Planet Bingo can recover lost profits,

---

**7**     Burlington did request summary adjudication that it was not liable for Planet Bingo's claimed lost profits.  In its memorandum of points and authorities, however, its only argument regarding lost profits was that they were barred by the statute of limitations.

13

rather than an excess judgment, based on failure to settle.**8** We focus instead on whether it matters that there was no offer to settle within the policy limits.

"An insurer does not breach the duty to settle if it never had an opportunity to settle. . . . [T]he opportunity to settle is typically shown by proof that the injured party made a reasonable settlement offer within the policy limits and the insurer rejected it. [Citation.]" (*Howard v. American National Fire Ins. Co.* (2010) 187 Cal.App.4th 498, 525.)**9**

For example, in *Heredia v. Farmers Ins. Exchange* (1991) 228 Cal.App.3d 1345, a third-party claimant was suing the insureds along with two other alleged joint tortfeasors. (*Id*. at p. 1349.) He offered to settle for the policy limits; however, because he wanted to avoid a "'empty chair defense'" by the other two defendants, his offer required that the insureds remain parties through trial, and that the insurer continue to provide them with defense counsel. (*Id*. at pp. 1349-1350.) The insureds' attorney made a counteroffer to pay the policy limits and to have the insureds participate at trial, either as witnesses or as

**8** Planet Bingo cites and relies extensively on *Bodenhamer v. Superior Court* (1987) 192 Cal.App.3d 1472. *Bodenhamer*, however, goes to whether an insurer can be liable for lost profits and lost reputation based on its failure to settle in the absence of an excess judgment, a question that, as we have concluded, is not raised in this appeal.

**9** Planet Bingo cites Insurance Code section 790.03, which requires an insurer, among other things, to "attempt[] in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear." (*Id*., subd. (h)(5).) However, this statute does not create a private right of action. (*Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 292, 294, 304.)

parties without counsel.  (*Id*. at p. 1350.)  The claimant refused this counteroffer.  (*Ibid*.)  Eventually, the claimant won an excess judgment.  (*Id*. at p. 1351.)

In the subsequent bad faith action, the trial court ruled for the insurer on the ground that there had been no offer to settle within the policy limits.  (*Heredia v. Farmers Ins. Exchange*, *supra*, 228 Cal.App.3d at p. 1353.)  The appellate court agreed that the settlement offer was in excess of the policy limits, because it required the insurer not only to pay the policy limits, but also to continue to provide a defense.  (*Id*. at pp. 1354-1358.)  Most important for our purposes, it also agreed that, as a result, the insurer could not be liable for failing to accept the offer.  (*Id*. at pp. 1354-1355.)

*Walbrook Ins. Co. v. Liberty Mutual Ins. Co.* (1992) 5 Cal.App.4th 1445 similarly held that "the duty of good faith compels acceptance of a settlement offer only if the offer is *within* the insurer's policy limits [citations] . . . ."  (*Id*. at p. 1457.)  Therefore, in assessing bad faith, it ignored a settlement offer the claimant had made that was in excess of the policy limits; it considered only the claimant's earlier offers, which had been within the policy limits.  (*Id*. at pp. 1457-1458; see *id*. at pp. 1451-1452; see also *McLaughlin v. National Union Fire Ins. Co.* (1994) 23 Cal.App.4th 1132, 1145-1146 ["Plaintiffs cannot prove a pivotal element of their [bad faith] case — namely, a settlement offer *within policy limits* . . . ."].)

Thus, it has been said that "[a]n insured's claim for bad faith based on an alleged wrongful refusal to settle first requires proof the third party made a reasonable offer to

15

settle the claims against the insured for an amount within the policy limits. [Citation.]" (*Graciano v. Mercury General Corp.* (2014) 231 Cal.App.4th 414, 425.)

Despite this flat statement in *Graciano*, however, *Boicourt v. Amex Assurance Co.* (2000) 78 Cal.App.4th 1390 held that an insurer can be liable for failure to settle even in the absence of a formal offer to settle within the policy limits. There, the claimant asked the insurer to disclose its policy limits. The insurer refused to do so (and did not ask its insured for permission to do so), explaining that it "had a 'policy not to disclose the amount of the policy limits.'" (*Id.* at p. 1393.) The claimant then filed suit against the insured and recovered an excess judgment. (*Ibid.*) He later testified that he would have been willing to settle for the policy limits, had he known what they were. (*Ibid.*)

The appellate court held that a bad faith claim can be based on an insurer's prelitigation refusal to disclose the policy limits. (*Boicourt v. Amex Assurance Co.*, *supra*, 78 Cal.App.4th at pp. 1393-1399.) It explained that, in that situation, there is a conflict of interest between the insurer and the insured. (*Id.* at pp. 1397-1399.) "A conflict of interest can indeed develop without a formal settlement offer being made by the claimant." (*Id.* at p. 1397.) "[A] liability insurer '"is playing with fire"' when it refuses to disclose policy limits. Such a refusal '"cuts off the possibility of receiving an offer within the policy limits"' by the company's '"refusal to open the door to reasonable negotiations."' [Citation.]" (*Id.* at p. 1391.) Thus, the court also held that "a formal settlement offer is *not* an absolute prerequisite to a bad faith action . . . ." (*Id.* at p. 1399.)

16

*Boicourt* has been read broadly, as standing for the proposition that "[a] formal settlement demand is not an absolute prerequisite to a bad faith action when the insurer engages in conduct that prevents settlement opportunities from arising . . . ." (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2020) ¶ 12:293, p. 128-17 (Croskey); see also *Reid v. Mercury Ins. Co.* (2013) 220 Cal.App.4th 262, 266, 272.) We need not decide whether this broad reading is correct, however, because we can decide the case on a narrower ground.

At a minimum, *Boicourt* means that the existence of an opportunity to settle within the policy limits can be shown by evidence other than a formal settlement offer. In *Boicourt* itself, the claimant's request for disclosure of the policy limits suggested an interest in settling within those limits. As the court stated, "the relevance of disclosure of policy limits to the settlement of an underlying claim cannot be gainsaid." (*Boicourt v. Amex Assurance Co.*, *supra*, 78 Cal.App.4th at p. 1393, italics omitted.) The claimant testified that he would have settled for the policy limits. (*Ibid.*) The court left to be determined, on remand, "Whether [the] request for policy limits represented a genuine opportunity to settle an excess claim within policy limits . . . ." (*Id.* at p. 1399.)

It is significant that AIG was claiming as subrogee, and its letter was a subrogation demand letter. Planet Bingo's expert witness testified that a subrogation demand letter "offers a clear invitation to negotiate a settlement for less than that amount . . . ." She also testified that there is a "very well[-]known industry custom in such subrogation

17

claims of accepting policy limits for a full release o[f] the insured."**10**  This raised a triable issue of fact as to whether the letter represented an opportunity to settle within the policy limits.

Rather than respond to the letter, less than a month later, Burlington denied coverage.  As we held in the previous appeal, this denial of coverage was improper.  There was at least a potential for coverage, depending on whether Planet Bingo was ultimately sued in the United States or Canada.  The policy specifically stated that, even before any suit was filed, Burlington *would* cover an occurrence in the United Kingdom, provided Planet Bingo's liability was determined "[i]n a settlement [Burlington] agree[d] to."**11**

Planet Bingo also contends that there is a triable issue of fact as to whether Burlington is liable for conducting an inadequate prelitigation investigation.  We do not address this contention.  What we have already said means that Burlington was not entitled to summary *judgment*.  It did not move for summary *adjudication*, except on whether it could be liable for punitive damages.  (See Cal. Rules of Court, rule 3.1350(b)

---

**10**    This is not a case in which the offer to settle was ambiguous or incomplete. (Cf. *Betts v. Allstate Ins. Co.* (1984) 154 Cal.App.3d 688, 708, fn. 7; *Allen v. Allstate Ins. Co.* (9th Cir. 1981) 656 F.2d 487, 490.)  AIG's demand was what it was — and it was over the policy limits.  The only uncertainty was not as to the demand itself, but only as to whether further negotiation might produce a new and different demand, within policy limits.  Thus, Burlington cannot be liable for failure to seek clarification.

**11**    We agree that Burlington cannot be liable for failing to settle during the period from March 2009 through July 2014.  During that time, Burlington never received an offer to settle that was within the policy limits.  Leisure and Beacon consistently demanded at least $2.6 million (and sometimes more).

18

[motion for summary adjudication must specify "the specific cause of action, affirmative defense, claims for damages, or issues of duty"].) Moreover, a motion for summary adjudication may be granted "only if it completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty." (Code Civ. Proc., § 437c, subd. (f)(1).) Our holding means that Burlington was not entitled to summary adjudication on any *entire* cause of action on the ground that it was not liable for failure to settle. Thus, the trial court erred by granting summary judgment on this ground.

V

THE STATUTE OF LIMITATIONS

"'We affirm the trial court's decision if it is correct on any ground the parties had an adequate opportunity to address in the trial court, regardless of the reasons the trial court gave.' [Citation.]" (*Wolf v. Weber* (2020) 52 Cal.App.5th 406, 410.)

Burlington therefore contends that, even if there is a triable issue as to breach of contract or bad faith, those causes of action are barred by the statute of limitations.

The trial court ruled that Burlington had forfeited the statute of limitations as a defense by not properly pleading it in its answer. We will assume, without deciding, that this was incorrect and this defense was not forfeited.

Planet Bingo filed this action in February 2016. The limitations period for a cause of action for breach of an insurance policy is four years. (Code Civ. Proc., § 337, subd. (a); Croskey, ¶ 12:1138, p. 120-10.) The limitations period for a cause of action for breach of the implied covenant of good faith and fair dealing is four years, if contract

19

damages are sought (*Archdale v. American Internat. Specialty Lines Ins. Co.* (2007) 154 Cal.App.4th 449, 471), or two years, if tort damages are sought.  (Code Civ. Proc., § 339, subd. 1; *Richardson v. Allstate Ins. Co.* (1981) 117 Cal.App.3d 8, 13.)

As we held in part IV, *ante*, there is evidence that Burlington wrongfully failed to settle in August 2014.  Accordingly, this action, filed less than two years later, was timely on either theory.

Planet Bingo first noticed that it was starting to lose business, allegedly due to Burlington's failure to settle, in 2010 or 2011.  Burlington therefore argues that that was when Planet Bingo's claim accrued.

To the extent that Planet Bingo's causes of action sound in contract, it could ignore any breaches in 2010 and 2011 and sue only when the contract was definitively breached in 2014.  "[W]hen there are ongoing contractual obligations the plaintiff may elect to rely on the contract despite a breach, and the statute of limitations does not begin to run until the plaintiff has elected to treat the breach as terminating the contract. [Citation.]"  (*Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 489.)

To the extent that Planet Bingo's causes of action sound in tort, Planet Bingo argues that it is entitled to equitable tolling.  It has been held that "[t]he statute of limitations for actions on insurance claims is equitably tolled from the time the insured notifies the insurer of the claim until coverage is denied.  [Citation.]"  (*Marselis v. Allstate Ins. Co.* (2004) 121 Cal.App.4th 122, 124.)  Burlington raises several arguments as to why such equitable tolling does not apply here.

20

We need not decide the equitable tolling question. We may assume that Planet Bingo's tort claim for damages between March 2009 and August 2014, to the extent that it is based on either a failure to settle or an inadequate investigation, is time-barred.[12] Even if so, Burlington committed a new and independent tort by failing to settle in August 2014. The record shows that Planet Bingo continued to lose business in the United Kingdom from 2014 through 2019. Thus, at a minimum, Planet Bingo's tort claim, to the extent that it is based on this failure to settle, is not time-barred.

Burlington also argues that Planet Bingo's original complaint did not allege any lost profits or any damages to its business reputation; it alleged these for the first time when it filed its second amended complaint, in April 2019. According to Burlington, these allegations do not relate back to the original complaint, and therefore any claim for such damages is time-barred.

Burlington did not raise this argument in its motion for summary judgment. It raised it for the first time in its reply brief, and then only in a footnote. Planet Bingo never had an opportunity to respond to it. Accordingly, this argument is not properly presented. (*Paramount Petroleum Corp. v. Superior Court* (2014) 227 Cal.App.4th 226, 244.)

But it lacks merit in any event.

---

**12**    As we held in part IV, *ante*, Planet Bingo cannot recover lost profits during this period on a failure to settle theory, even aside from the statute of limitations.

21

"The relation-back doctrine allows an amendment filed after the statute of limitations has run to be deemed filed as of the date of the original complaint '"provided recovery is sought in both pleadings on the same general set of facts."'  [Citation.]  'In order for the relation-back doctrine to apply, "the amended complaint must (1) rest on the *same general set of facts*, (2) involve the *same injury*, and (3) refer to the *same instrumentality*, as the original one."'  [Citation.]"  (*Bridgeman v. Allen* (2013) 219 Cal.App.4th 288, 296.)

In this context, there is a difference between an injury and the damages that flow therefrom.  "A claim for different damages does not indicate there are different injuries.  Rather, injuries may encompass the same primary rights.  [Citation.]"  (*Honig v. Financial Corp. of America* (1992) 6 Cal.App.4th 960, 966.)  Thus, "an amendment seeking new damages relates back to the original complaint if such damages resulted from the same operative facts — i.e., the same misconduct and the same injury — previously complained of.  [Citation.]"  (*Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1200.)

The injuries here were the injuries to Planet Bingo's primary rights under the policy and under the implied covenant of good faith and fair dealing.  They are the flip side of Burlington's alleged misconduct — its inadequate investigation and its failure to settle.  Thus, the lost profits alleged in the second amended complaint resulted from the same misconduct and the same injuries that were alleged in the original complaint.

We therefore conclude that Burlington was not entitled to summary judgment based on the statute of limitations.

VI

DISPOSITION

The judgment is reversed. Because the trial court granted summary judgment, it never ruled on Burlington's request for summary adjudication "that [Burlington] cannot be liable for punitive damages." On remand, the court is directed to rule on this aspect of the motion. It may, in its discretion, receive additional briefing, evidence, or argument; however, it is not required to do so. (See *City of Los Angeles v. Shell Oil Co.* (1971) 4 Cal.3d 108, 128.) It is directed either (1) to set a briefing and/or hearing schedule or (2) to order that the motion for summary adjudication is submitted, within 90 days after our remittitur issues; it may extend this deadline, on a party's motion or on its own motion, for good cause shown. Planet Bingo is awarded costs on appeal against Burlington.

CERTIFIED FOR PARTIAL PUBLICATION

RAMIREZ
P. J.


We concur:

McKINSTER
J.

SLOUGH
J.

23